[Civ. No. 7185. Third Dist. Mar. 14, 1946.]

H. S. BUTTRAM et al., Appellants, v. LIVONIA J. FINLEY et al., Respondents.

538

Murphy & Brownscombe and James F. Brennan for Appellants.

Geary & Tauzer, Barrett & McConnell and A. Dal Thomson for Respondents.

THE COURT.—In a former appeal in this case this court reversed a judgment in favor of defendants and directed the trial court to render judgment for plaintiffs quieting title in them to their undivided one-half interest in the real property in Sonoma County which is involved on this appeal. (*Buttram* v. *Finley*, 37 Cal.App.2d 459 [99 P.2d 1093].) Upon rehearing of a designated issue, instead of complying with the mandate of this court, after a decree of distribution in the estate of Henry Clay Mizer, deceased, originally entered in 1880, had been amended *nunc pro tunc*, over the objection of plaintiffs, the trial court received in evidence the amended decree which raises an issue which was neither tried nor considered at the former hearing or by this court, and again rendered judgment for the defendants contrary to the explicit direction of this court. From that judgment this appeal was perfected.

The complaint alleges that plaintiffs own an undivided one-half interest in real property in Sonoma County, and ask partition thereof. A decree of distribution, which was rendered in the estate of Henry Clay Mizer, deceased, April 12, 1880, is the source of title of the respective parties. Mr. Mizer died testate in 1877, leaving surviving him, his widow, Sarah P. Lynch, formerly Sarah P. Mizer, and other heirs and devisees. The will was admitted to probate. In due time the decree of distribution was made, from which no appeal was taken. It distributed ''To the said Sarah P. Lynch, the one-half of the residue of said Estate and a life estate in the other half, . . . and to the said Nancy Buttram if she survives her [Sarah P. Lynch], the residue of said other one-half . . . but should said Nancy die first, then to her heirs, but *as a condition precedent* the said share to Nancy Buttram

or her heirs *is subject to the sum of $1500.00 to be invested as a monument* to be erected to the said Sarah P. Lynch according to said Will, and the said amount be and is hereby made a charge upon said residue devised to Nancy Buttram or her heirs.'' (Italics added.) The will made no reference to a ''condition precedent.'' The terms of the will were not included in the decree. Sarah P. Mizer survived Nancy Buttram. The monument was not erected.

On the former hearing of this case the trial court determined that the erecting of the monument at a cost of $1,500 was a ''condition precedent'' to the passing of title and that the failure to erect the monument defeated plaintiffs' title. Judgment was thereupon rendered against plaintiffs. From that judgment the first appeal was taken December 29, 1937. This court held that the erecting of the monument was not a condition precedent. Since the decree of distribution was ambiguous on its face, resort was had to the provisions of the will to ascertain the intention of the testator. A hearing, after judgment by this court, was denied by the Supreme Court. This court reversed the judgment of the trial court and specifically directed the court to ''ascertain the interests of the several plaintiffs and *render judgment in their favor* quieting title thereto.''

On the first trial, the only issue with respect to the title to the real property was the question as to whether the provision of the decree of distribution requiring the erection of a monument on the grave of Sarah P. Mizer, the widow of the deceased, created a ''condition precedent'' to the passing of title. No other provision of the will or decree was called to the attention of either the trial court or this court. At the former trial it was not contended the devise to Sarah P. Mizer was coupled with a power of sale. Neither the trial court nor this court knew of that alleged provision. It was first called to the attention of the Supreme Court on defendants' petition for a hearing after the decision of this court. The Supreme Court properly disregarded that contention because it was not an issue at the trial.

On the second hearing which occurred March 23, 1942, after the reversal of the former judgment, and after the amendment of the decree of distribution *nunc pro tunc* over the objection of plaintiffs, the trial court received in evidence the amended decree over plaintiffs' objection. That amendment provides in part that distribution be made:

"To the said Sarah P. Lynch [formerly Sarah P. Mizer] the one-half of the residue of said estate and a life estate in the other half to have and to hold during her natural life, *and to use and dispose of the same as she may see fit, . . . ."* (Italics added.)

It is now contended the italicized language of the decree, as amended, created a devise coupled with the power of sale, which became an absolute transfer of title and defeated plaintiffs' interest in the property. (*Parker* v. *Bower,* 172 Cal. 436 [156 P. 869].)

Based upon that amended decree, the trial court again rendered judgment for the defendants contrary to the decision of this court, to the effect that plaintiffs have no title to the land in question.

The appellants contend that the trial court was not authorized to disregard the mandate of this court by admitting evidence of the decree as amended *nunc pro tunc,* after the lapse of more than sixty years, and to render judgment for the defendants based thereon, with respect to the title to the real property, contrary to the explicit direction of this court on the former appeal, since the amendment raises a new issue which was not considered by the trial court or by this court at the first hearing or on appeal therefrom; that the decision of this court became the law of the case and is absolutely controlling with respect to the title to the land.

The defendants assert that "The amendment of the decree nunc pro tunc occurred subsequently to the decision of this Court upon the prior appeal and was a fact which was not in existence at the time of the decision on the prior appeal," and that, as an exception to the general rule, the trial court was authorized to receive in evidence the amended decree and to render judgment in accordance therewith, contrary to the mandate of this court.

We are of the opinion the trial court erred in failing to conform to the specific directions of the appellate court to render judgment in favor of the plaintiffs, quieting title in them, and in again rendering a judgment against plaintiffs based on new facts and a new issue which were neither presented nor considered on the former trial or appeal. In effect that procedure would amount to the granting of a new trial, contrary to the specific direction of the appellate court, and it resulted in nullifying this court's judgment, upon facts which were within defendants' knowledge from the inception

of the litigation. The defendants could not consistently plead ignorance of the provisions of the will and of the decree of distribution upon the terms of which their title rested. It is conceded that the decree of distribution is the source of the title of the respective parties. That decree had been on record for more than sixty years. The amendment to the decree does not rise to the dignity of newly discovered evidence. The lack of diligence is apparent. ■ While it is true that the decree, as amended, was not in existence when the judgment of this court was rendered and the specific direction of the trial court was made, the fact upon which that amendment of the decree was made was then in existence and the defendants must be presumed to have had knowledge of that fact. ■ The fact which was the basis of the amendment to the decree did not occur after the judgment of this court was rendered. The issue raised by that fact was not involved or considered on the former trial. It therefore did not come within the asserted exception to the general rule that the mandate of the reviewing court is binding on the trial court and must be strictly followed. (3 Am.Jur. 730, § 1234.)

■ Where a reviewing court reverses a judgment with directions to render a contrary judgment and to determine a specified issue only, such as the amount of damages to be awarded, or to ascertain the several interests of the respective parties, the trial court is bound by the directions given and has no authority to retry any other issue, or to admit new evidence in conflict with the judgment of the reviewing court, or to enter a contrary judgment. The directed judgment of the reviewing court becomes the law of the case, and it is absolutely controlling on the jurisdiction of the trial court. (*Rice* v. *Schmid,* 25 Cal.2d 259 [153 P.2d 313]; *Soule* v. *Dawes,* 14 Cal. 247; *Lial* v. *Superior Court,* 133 Cal.App. 31 [23 P.2d 795]; *Snoffer* v. *City of Los Angeles,* 14 Cal. App.2d 650 [58 P.2d 961]; 2 Cal.Jur., pp. 1051-1054, §§ 625-627; 3 Am.Jur. 730, § 1234.)

The case of *Rudiger* v. *Coleman,* 228 N.Y. 225 [126 N.E. 723], upon which the defendants in this case chiefly rely, is not in conflict with the previous statement of the law with respect to the duty of a trial court to carry into effect the mandate of a reviewing court. In that suit to cancel a deed and a contract conveying land to the defendants, for breach of contract and failure to organize and to hold and operate the property in the name of a corporation, and for an ac-

counting, the trial court dismissed the action. The appellate court reversed the judgment and directed the trial court to render judgment for plaintiffs requiring the defendants to *reconvey the land to plaintiffs,* and to account for all pro-.ceeds from sales of rock quarried from the property. After the judgment of the trial court, pending the appeal, a portion of the real property which the reviewing court directed to be reconveyed to plaintiffs, was condemned and acquired by the city of New York, without fault on defendants' part and without knowledge of the reviewing court. Upon supplemental proceedings the trial court granted emergency relief to meet conditions which changed pending the first appeal over which none of the parties had control. A portion of the real estate having been condemned and taken from the defendants, they were powerless to convey it to plaintiffs. In lieu of the conveyance of the property which the city had condemned and acquired the defendants were ordered to pay plaintiffs their share of the award of damages secured on the condemnation proceedings. The mandate of the reviewing court was not disregarded or otherwise disturbed. The relief merely authorized the payment of plaintiffs' share of the money received from condemnation of a portion of the land. The reversal of the judgment still stood. The spirit and effect of the judgment of the reviewing court was carried out as completely as was possible under the changed conditions. It merely added a further provision in support of the judgment.

In the very able opinion of Mr. Justice Cardozo it is said in that regard:

"Our decision [rendered after the appeal was taken in October 1906] spoke as of that time. We found the land intact in October, 1906, and we held that the trustees were then under a duty to return it to the plaintiffs. That adjudication was a finality. The Supreme Court, in entering judgment on our remittitur, was powerless to change it. *Sayre* v. *State of New York,* 128 N.Y. 622, 27 N.E. 1079. But, as a result of new conditions, the relief to which we held that the plaintiffs were entitled in October, 1906, was no longer ·complete or effective in October, 1910. We could not know when we ordered the trustees to reconvey, that part of the subject-matter of the conveyance had been sold and that part of it had been wasted. In adapting the relief to the exigencies of new conditions, the Supreme Court was not attempting to overrule our judgment or to review it. Such adaptation is not nullification, but enforcement."

The Rudiger case is not authority in support of the rendering of judgment in this case adverse to the clear mandate of this court.

Likewise, the other cases cited by respondents upon that principle of law are similarly distinguishable. They have no application to the facts of this case.

In *Estate of Goldberg*, 10 Cal.2d 709 [76 P.2d 508], cited by the respondents in this case, it was held that, *where it appears from the face of a decree of distribution* that a clerical error exists therein, the decree may be amended to correct that error. That case does not hold that the decree may be amended to set up a fact or a new issue which was neither presented nor considered at the trial or on appeal as a basis for the trial court to disregard the mandate of a reviewing court or to justify the trial court in rendering a judgment in absolute conflict with that of the reviewing court. The question of a trial court disregarding the direction of a reviewing court in its decision on appeal was not involved in that case.

We conclude that the last judgment of the trial court in this case is in conflict with the mandate of this court on the issue of title to the property, and that it is therefore erroneous and ineffectual.

Moreover, the decree in the estate of Henry Clay Mizer, deceased, on account of the death of Nancy Buttram prior to the death of Sarah P. Mizer, distributed the property in question "to the heirs" of Nancy Buttram. Pursuant to that decree title was acquired by the plaintiffs in this case. An amended decree of distribution should not be permitted to apply *nunc pro tunc* as of the date of the original decree so as to antedate and defeat the title of strangers to the estate who have acquired title in good faith for a valuable consideration and in reliance upon the terms of the original decree. However, it is not necessary for us to determine that equitable principle since the decision of this court became the law of the case with respect to the issue of title to the real property.

On this appeal the parties concede that, if it is determined plaintiffs have title to their one-half undivided interest in the property, the right to partition the land is an issue which has not been but should be determined by the trial court. In the event that partition is ordered defendants claim the benefit of the value of improvements which they placed on the property, at least to the extent that their improvements

enhanced the value of the land. The plaintiffs assert that if such value of improvements is allowed, they are entitled to offset such enhanced value by the rental value of the land while defendants were in the exclusive possession thereof. These are questions which must be determined by the trial court on rehearing of that phase of the case. We cannot anticipate the nature of the evidence which may be adduced on the issue of partition.

 The defendants rely chiefly on their claim that the plaintiffs have no title to the land. That issue has been finally determined in favor of the plaintiffs. The former decision of this court is conclusive of that issue. (*Buttram* v. *Finley*, *supra*.) The amended answer does allege that certain named defendants constructed a dwelling house and planted prune, cherry and walnut trees on the land. It is not alleged that defendants then had exclusive possession of the land, or the circumstances under which such improvements were made. Nor is it alleged such improvements enhanced the value of the land, or how much the value was increased thereby. The plaintiffs contend that if the value of improvements is allowed to the defendants on partition, that plaintiffs are entitled to offset the same in the amount of ''the reasonable value of the use and occupancy of plaintiffs' interest in the property,'' amounting to $965 per year, since January 4, 1928. Plaintiffs suggest that this court should direct the trial court to render judgment in their favor for said amount.

 The question of the respective rights of tenants in common in partition suits, to the benefit of the enhanced value of land on account of improvements, and of the right to offset the same by rents and profits derived, depends upon the facts of a particular case. It involves the questions of good faith, consent of parties, nature of the improvements, the source and amount of rents and profits, and many elements which do not appear to have been considered in either the pleadings or proof in this case. No findings were adopted on any such issues. On the theory and finding that the plaintiffs have no title in the property, the court merely held that they were not entitled to partition. It also appears that the land is subject to certain specified mortgage liens. We assume the question of the right to partition, and the allowances incident thereto, have not been determined by the trial court on their merits.

In partition suits between tenants in common, the subject of allowances of enhanced value of the real property by vir-

tue of alleged improvements thereon, and of the right to offset such allowances, if any, by the rents and profits derived, has been frequently considered by the courts and text writers. (*Ventre* v. *Tiscornia,* 23 Cal.App. 598 [138 P. 954]; *Gerontopoulos* v. *Gerontopoulos,* 20 Cal.App.2d 261 [66 P.2d 724]; *McWhorter* v. *McWhorter,* 99 Cal.App. 293 [278 P. 454]; *Goodenow* v. *Ewer,* 16 Cal. 461 [76 Am.Dec. 540]; *Pico* v. *Columbet,* 12 Cal. 414 [73 Am.Dec. 550]; 40 Am.Jur. pp. 32-44, §§ 39-51; 47 C.J. pp. 469-476, §§ 497-515; 1 A.L.R. 1189, note; 122 A.L.R. 234, note.)

With respect to the undecided issue of partition or sale of the property, and of the terms, conditions and allowances to be imposed or awarded, if any, it becomes necessary to remand the case for hearing and determination thereof.

The judgment is reversed and the trial court is directed to render judgment in favor of the plaintiffs, quieting title in them to their undivided one-half interest in the real property as previously determined by this court, and the cause is remanded for trial of the issues of partition or sale of the property and to determine, as incident thereto, all liens and legal allowances to be charged against the various shares of the respective parties.

Respondents' petition for a hearing by the Supreme Court was denied May 9, 1946. Carter, J., and Schauer, J., voted for a hearing.