Filed 4/20/22  Thornber v. Colby CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| SALLY THORNBER et al., | C089687 |
| Plaintiffs and Respondents, | (Super. Ct. No. SCV0039412) |
| v. | |
| DIANE COLBY, | |
| Defendant and Appellant. | |

Plaintiffs Sally Thornber and Kevin Thornber brought suit against defendant Diane Colby seeking partition of a jointly owned single family home in Rocklin (the property).[1]  Following a court trial, the trial court ordered the partition by sale of the property and the appointment of a referee to oversee the sale.  The trial court also found that attorney's fees incurred by Sally and Kevin were for the common benefit, and

---

[1] We will refer to the parties by their first names for clarity and convenience.

ordered Diane to pay a proportionate share of those fees pursuant to Code of Civil Procedure section 874.040.[2]

Diane appeals in propria persona. She raises numerous challenges to the conduct of the court trial and ensuing interlocutory judgment and orders. None of Diane's challenges have merit. We will affirm.

## I. BACKGROUND

Diane and Sally are the adult children of James A. Plessinger and Dorothy W. Plessinger, both of whom are now deceased. Kevin is Sally's ex-husband. James was an attorney with experience in real property matters and a real estate broker. Dorothy was also a real estate professional; an occupation Sally and Diane appear to have pursued at various times.

James and Dorothy purchased the property in 2005. Diane moved into the property sometime later and lived with James and Dorothy for several years. Dorothy died in August 2012. James died in January 2014. Diane remained on the property after James's death.

A.    *The Pleadings*

Sally and Kevin filed a complaint for partition by sale against Diane on May 9, 2017.[3] The complaint alleges that James and Dorothy purchased the property in June 2005 for $644,500 and financed the purchase, in part, with a $160,000 bank loan secured by a deed of trust. The complaint further alleges that Sally and Kevin contributed $350,000 towards the purchase price, with the expectation that they would eventually receive an interest in the property. The complaint further alleges that James and Dorothy

---

[2] Undesignated statutory references are to the Code of Civil Procedure.

[3] The complaint also asserted a cause of action for waste which was apparently abandoned before trial.

borrowed an additional $40,000 from the bank in February 2006, secured by a second deed of trust against the property.

The complaint alleges that James and Dorothy executed a grant deed on March 7, 2007 (the deed), which provides, in pertinent part: " 'James A. Plessinger and Dorothy W. Plessinger, husband and wife as joint tenants hereby grant to James A. Plessinger and Dorothy W. Plessinger, husband and wife as joint tenants, and Kevin Thornber and Sally Thornber, husband and wife as joint tenants, all as joint tenants.' "[4] The complaint further alleges that Dorothy's interest terminated upon her death in August 2012, resulting in ownership of the property by James, Sally, and Kevin as joint tenants, each with an equal undivided one-third interest. The complaint further alleges that James subsequently executed another grant deed, which was recorded on January 15, 2014 (the 2014 deed), and conveyed James's undivided one-third interest in the property to Diane. The complaint seeks an order of partition by sale, various offsets from the proceeds of the sale, and attorney's fees and costs.

Diane demurred to the complaint. The trial court overruled the demurrer. Diane also filed a cross-complaint asserting causes of action for fraud, intentional infliction of emotional distress, and waste. Sally and Kevin demurred to the cross-complaint. The trial court sustained the demurrer with leave to amend. Diane filed a first amended cross-complaint. Sally and Kevin demurred to the first amended cross-complaint, and the trial court sustained the demurrer without leave to amend.

B.    *The Court Trial*

The matter proceeded to a court trial on March 28, 2019. The court trial began uneventfully enough, with the morning session given to opening statements and some testimony from Kevin. The trial court then recessed for lunch. When the parties

---

[4] As we shall discuss, Sally and Kevin would later offer into evidence a certified copy of the deed, which contained the same vesting language.

reconvened, however, Diane observed that no court reporter was present and demanded that one be provided. The trial court determined no court reporter had been previously requested. The trial court informed Diane that Placer County Superior Court does not provide court reporters in civil cases and does not have a ready pool of court reporters available to come into the courtroom at a moment's notice. Diane requested a continuance so that a court reporter could be ordered at the court's expense. The trial court denied the request and resumed the proceedings, hearing the rest of Kevin's testimony and some of Sally's testimony.

We have only a limited record of Sally and Kevin's testimony on the first day, given the absence of a court reporter.[5] So far as the record reveals, Sally and Kevin testified that they contributed a significant portion of the purchase price for the property, with the expectation that they would receive an interest in it.[6] According to the statement of decision, the original plan was for Kevin to be named as a purchaser of the property, along with Dorothy and James. However, Sally and Kevin later agreed to allow Dorothy and James to take title in their names alone so they could borrow against the property to provide for their living expenses. After the purchase was completed and the property encumbered, James and Dorothy executed the deed which, as alleged, vests title in "James A. Plessinger and Dorothy W. Plessinger, husband and wife as joint tenants[,] and Kevin Thornber and Sally Thornber, husband and wife, as joint tenants, all as joint tenants." The evidence was undisputed that Dorothy died in August 2012, leaving James, Sally, and Kevin as the surviving joint tenants. As we shall discuss, Diane's defense case

---

[5] Our record of Sally and Kevin's case in chief derives primarily from the trial court's statement of decision and testimony given on the second day of the court trial, which was reported by court reporter.

[6] The purchase price and extent of Sally and Kevin's contribution are alleged in the complaint, but do not appear to have been the subject of any recorded testimony.

4

consisted of a series of challenges to the authenticity and validity of the deed, a certified copy of which was admitted into evidence.

A court reporter appeared for the second day of trial. At the beginning of the second day's proceedings, the trial court found the signatures on the deed had been acknowledged by a notary public and the statutory requirements for the certificate of acknowledgment appeared to have been met, raising a presumption that the facts set forth in the instrument were true, and the signatures genuine. (Civ. Code, §§ 1181 & 1189; Gov. Code, § 8205; see Evid. Code, § 1451 [certificate of acknowledgment "is prima facie evidence of the facts recited in the certificate"]; Wegner et al., Cal. Practice Guide: Civil Trials and Evidence (The Rutter Group 2021) ¶ 8:361, Ch. 8C-B [" 'Acknowledged writings' (e.g., deeds, mortgages, grants of easements, etc.) are presumed to be authentic"].) The trial court informed Diane that the burden of proof had now shifted to her to rebut the presumption. The trial court then conducted a mini trial on the authenticity of the deed.

Diane testified in narrative form, with frequent digressions. She asserted that James had not signed the deed, but that Dorothy had forged James's signature in response to pressure from Sally. Although Diane acknowledged not having been present at the signing, she testified, subject to hearsay objections, that James told her the deed had been signed outside the presence of a notary, by Dorothy only. Diane further testified that Dorothy had admitted signing for James. According to Diane, James lamented this state of affairs, as he had intended to leave the entire property to her. Diane recounted a conversation in the hospital in 2013 in which James told Sally that the deed was invalid and gave her to understand that he wanted Diane to have the entire property when he died. According to Diane, Sally responded by acknowledging in her presence that the deed was invalid. Diane further testified that she had seen a signed but unnotarized copy of the deed amongst James and Dorothy's papers.

5

Sally denied discussing the deed with James and Diane in the hospital and denied hearing James say he wanted Diane to have the property. Sally further testified that she was familiar with James's signature, and opined that the signatures on the challenged deed and unchallenged 2014 deed were the same.[7]

The trial court then ruled from the bench on the authenticity of the deed. The trial court generally excluded Diane's testimony that James denied signing the deed, finding the testimony was hearsay not subject to any exception. However, the trial court admitted Diane's testimony that James denied signing the deed in Sally's presence, and Sally acquiesced in the statement, finding that Sally's acquiescence was admissible as a party admission. On the whole, the trial court found that Diane failed to rebut the presumption that the deed was authentic and James's signature genuine.

The trial court then asked Diane for an offer of proof regarding any remaining defense witnesses. Diane responded that she wanted to call two witnesses: a character witness, who would vouch for Diane's credibility, and a neighbor, who would testify that Sally neglected James and Dorothy and caused a rift in the family. Sally and Kevin stipulated that the proposed character witness would testify to Diane's credibility. The trial court excluded the neighbor's testimony on grounds of relevance.

The trial court then asked Diane for an offer of proof regarding any further examination or cross-examination of Sally. Diane responded that she intended to cross-examine Sally on the question of whether the deed was delivered, whether the deed had been superseded by James and Dorothy's wills, whether the deed was procured by fraud or undue influence, and whether Sally had waived her rights to the property. The trial

---

[7] The 2014 deed, which Sally and Kevin do not contest, provides that James "GRANT(s) to Diane Colby, His daughter, His entire interest, including the interest acquired as of August 16, 2012 at the death of His beloved Wife, Dorothy W. Plessinger, in the property described specifically below."

6

court preempted Diane's first and second lines of questioning by finding that the deed had been delivered, and any issue regarding James and Dorothy's wills was irrelevant. Diane then presented the rest of her defense case, beginning with an examination of Sally.

Diane elicited largely redundant testimony that Sally and Kevin acquired an interest in the property in exchange for their contribution towards the purchase price. She suggested that Sally and Kevin had committed mortgage fraud by providing purchase money with an expectation that they would receive an interest in the property. She also argued that Sally and Kevin had acquired the status of creditors, and thus lacked standing to bring an action for partition. The trial court rejected these arguments and announced a tentative decision to grant the partition by sale. Diane then requested an opportunity for supplemental briefing, which the trial court denied, stating, "You know what I find, I find that you are doing everything you can to delay this case and not get it ruled upon because you don't want the house ordered sold because you live there." The trial court then recessed for lunch.

Following the recess, Diane announced that she would need an additional three to five days in which to present her defense. She asserted that she had two additional witnesses she wanted to call, a minister and a deacon. She indicated that she had not subpoenaed either witness, but represented that both would be willing to come to testify to the wishes of James and Dorothy.[8] The trial court directed Diane to complete her presentation of the defense case that afternoon. Diane protested that she needed more time, and the trial court requested an additional offer of proof. Diane responded that she intended to show, through her own testimony, that the deed was the product of undue

---

[8] Although not entirely clear from the record, Diane apparently expected the minister and deacon to testify that they had been witnesses to the signing of wills by James and Dorothy.

7

influence, that the deed had been procured by fraud, and that Sally waived her right to partition. The trial court again directed Diane to complete her presentation that afternoon. Diane then moved for a directed verdict. The motion was denied.

Diane took the stand and testified, again, in narrative form. She covered a wide range of unrelated grievances, including an age discrimination suit against her former employer, her loss to foreclosure of another property, and Sally's absences from the family and filial neglect. As relevant here, Diane testified that Sally pressured James and Dorothy to sign the deed, and Dorothy succumbed, because she was suffering from Alzheimer's disease and feared that Sally might cause her to lose her home. According to Diane, James and Dorothy were deeply dismayed by the deed, as they wanted their interests in the property to go, first to one another, and then to Diane. Diane asserted that James and Diane had executed new wills in an attempt to nullify the deed.

Diane testified that James told Sally that he wanted Diane to have the property. According to Diane, Sally agreed that Diane would have the property or be allowed to remain there. Diane also testified that she had received an email from Sally confirming that she could remain on the property but had been unable to locate the email before trial.[9] Diane alluded to mortgage fraud in her testimony, but did not offer any evidence that the deed had been procured by fraud.

Sally testified briefly in rebuttal. She recalled speaking with Diane after James died. According to Sally, Diane asked whether she planned to kick her out of the property. Sally responded that Diane could take some time to get her feet on the ground before moving out. Sally implicitly denied telling Diane that she could remain on the property indefinitely.

---

[9] Diane later said that the email could not be found because her computer had been hacked.

8

The trial court terminated Diane's cross-examination of Sally relatively quickly, after Diane began leveling ad hominem attacks against her. The trial court then informed Diane, "Your defense is over." Diane protested that she wanted to testify as an expert on mortgage fraud and foreclosure. The trial court denied the request, but invited Diane to make an offer of proof in writing before the next scheduled trial date. The trial court indicated that it would consider reopening the evidentiary portion of the case if Diane made an adequate offer of proof. The trial court then continued the case for further proceedings.

The parties reconvened on April 18, 2019. The trial court heard argument on the possibility of reopening the evidentiary portion of the case, and then declined to do so. The trial court then heard closing arguments and announced its tentative ruling that an interlocutory judgment for partition by sale would issue. The trial court subsequently entered an interlocutory judgment directing the partition by sale of the property and appointing a referee to oversee the sale. As relevant here, the interlocutory judgment found that Sally, Kevin, and Diane each held a one-third interest in the property and directed that any outstanding mortgages be paid from the gross proceeds of the sale. The interlocutory judgment also specified that attorney's fees would be determined by the trial court prior to the close of escrow and apportioned equally between the parties. Diane appealed from the interlocutory judgment.

There followed a series of post-trial motions, including Sally and Kevin's successful motion to remove Diane from the property, and their motion to confirm the sale of the property and for attorney's fees and offsets. The trial court entered final judgment on November 18, 2019, confirming the sale of the property, and ordering the distribution of the proceeds by the referee. As relevant here, the final judgment includes an award of attorney's fees and costs in the amount of $60,000, apportioned equally between each of the parties. Diane appealed from the final judgment.

9

Diane then filed some sort of motion to set aside the judgment based on newly discovered evidence.[10] The motion, which purports to be based on Rule 60 of the Federal Rules of Civil Procedure, asserts that Sally testified to having initialed the deed at some point (this testimony does not appear in the limited record before us), but Diane had learned that an examiner with the same initials had been employed by the Placer County Recorder's Office during the relevant period. The trial court denied the motion. Diane appeals from the order denying the motion to set aside the judgment as well.

## II. DISCUSSION

### A. Diane's Burden on Appeal[11]

We begin with a brief discussion of relevant appellate rules and procedures. An appealed order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) "[A]ll intendments and presumptions are indulged in favor of its correctness." (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Appellants, even those representing themselves, have the burden of demonstrating reversible error by providing an adequate record. (*Ballard v. Uribe* (1986) 41 Cal.3d 564, 574; *Huang v. Hanks* (2018) 23 Cal.App.5th 179, 183 & fn. 1.) " '[A]n appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his [or her] claim. The appellant must present an adequate argument including citations to supporting authorities and to relevant portions of the record.' " (*Ribakoff v. City of Long Beach* (2018) 27 Cal.App.5th 150, 162.)

---

[10] The motion is styled as a "MOTION FOR: NEW EVIDENCE AND THE JUDGMENT TO BE VACATED OR SET ASIDE WITH RESTORAL FOR DEFENDANT UNDER FEDERAL RULE 60B AND RELATING CIVIL CODE AUTHORITY IN PART REQUEST FOR COURT REPORTER, AND NOTIFIED THE OFFICE HANDLING."

[11] Diane requests that we take judicial notice of certain documents lodged or proposed to be lodged with the trial court. We deny the request.

Diane's opening brief contains numerous violations of the California Rules of Court that have affected our ability to address the merits of this appeal, including failure to cite the record for factual assertions, references to facts outside of the record, failure to support each point with legal argument, and failure to state each point under a separate heading.[12]  (Rule 8.204(a)(1)(B)-(C), (b)(4).)  While we would be well within our discretion to strike the brief for noncompliance and grant leave to file a new one (rule 8.204(e)(2)(B)), we refrain from doing so in the interest of judicial economy.

Our review typically is guided by the headings in the argument section of the opening brief.  (Rule 8.204(a)(1)(B); *Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)  But here, too, the opening brief falls short.  Most of Diane's argument headings are incomplete and elliptical (e.g., "A Creditor Improper Partition Stand," and "The Waiver Agreement Filled With Promise, From Promise").  None of them encapsulate any coherent legal argument (e.g., "Hybrid Case With Law Issues" and "Remitter Denial—Counter suit Denial").  Nevertheless, we have liberally construed Diane's argument headings, giving them the meaning suggested by the record and the opening brief as a whole.  Doing so, we discern the following principal contentions:  (1) that the trial court erred in sustaining Sally and Kevin's demurrer to the first amended cross-complaint; (2) that the trial court erred in denying Diane's request for a court reporter; (3) that the trial court erred in denying her a jury trial; (4) that the trial court erred in shifting the burden of proof to Diane; (5) that the trial court erred in finding she failed to rebut the presumption that the deed was valid; (6) that the trial court erred in rejecting her affirmative defense of waiver; (7) that the trial court erred in rejecting her affirmative defense that the deed was procured by fraud by a fiduciary; (8) that the trial court erred in excluding as hearsay Diane's testimony about statements made by James;

---

[12] Undesignated references to the rules are to the California Rules of Court.

11

(9) that the trial court erred in excluding evidence regarding James and Dorothy's wills; (10) that the trial court violated Diane's right to due process; (11) that the trial court erred in appointing the referee; (12) that the trial court erred in apportioning attorney's fees equally between the parties; and (13) that the trial court erred in denying her motion to set aside the judgment.[13] We reject Diane's remaining arguments as unintelligible and decline to discuss them further.[14] We now consider the above-enumerated contentions, beginning with Diane's contention that the trial court erred in sustaining the demurrer to her first amended cross-complaint.

B.      *Challenge to Order Sustaining Demurrer to First Amended Cross-Complaint*

Diane argues the trial court erred in sustaining Sally and Kevin's demurrer to the first amended cross-complaint. She offers no discussion of the applicable standard of review or the elements of any cause of action. She does not point to any specific allegations in the first amended cross complaint and does not explain how the allegations state a cause of action or could be amended to do so. Diane merely expresses disagreement with the trial court's order. Diane's conclusory arguments are insufficient to meet her burden to affirmatively demonstrate error. (*Ribakoff v. City of Long Beach, supra,* 27 Cal.App.5th at p. 162.) We reject Diane's challenge to the order sustaining the

---

[13] Diane also argues the deed was a fraudulent transfer and should be set aside under the Uniform Fraudulent Transfers Act (now known as the Uniform Voidable Transactions Act, § 3439 et seq.), and the deed fails to establish a joint tenancy because the four unities were not met. These arguments were not raised in the trial court and have been forfeited on appeal. (See *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [arguments not raised in the trial court are forfeited on appeal].)

[14] These arguments include: (1) an impenetrable challenge to the legal description of the property; (2) an incoherent argument that the deed should be set aside out of respect for James and Dorothy's long and successful marriage; and (3) an unintelligible argument that the trial court erred in failing to properly apportion offsets and costs between the parties.

demurrer to the first amended cross-complaint and turn to the main event: Her numerous challenges to the conduct of the court trial in the partition action and ensuing interlocutory judgment.

C.     *Challenges to Court Trial and Interlocutory Judgment in Partition Action*

Under section 872.210, a co-owner of real or personal property may bring an action for partition. " 'The primary purpose of a partition suit is . . . to partition the property, that is, to sever the unity of possession. [Citations.]' [Citation.] 'Partition is a remedy much favored in law. The original purpose of partition was to permit cotenants to avoid the inconvenience and dissension arising from sharing joint possession of land. An additional reason to favor partition is the policy of facilitating transmission of title, thereby avoiding unreasonable restraints on the use and enjoyment of property.' " (*LEG Investments v. Boxler* (2010) 183 Cal.App.4th 484, 493 (*LEG Investments*).) A co-owner of property, absent express or implied waiver, has an absolute right to partition. (§ 872.710, subd. (b).)

Under section 872.210, the court may, as an alternative to effecting a division of the property between the parties, "order the property be sold and the proceeds divided among the parties in accordance with their interests in the property if the parties agree to such relief or the court determines sale and division of the proceeds would be more equitable than a division of the property." (*LEG Investments, supra,* 183 Cal.App.4th at p. 493.)[15] Although the law favors division in kind of commonly owned property, " ' "[i]n many modern transactions, . . . sale of the property is preferable to physical division since the value of the divided parcels frequently will not equal the value of the whole parcel before division. Moreover, physical division may be impossible due to

_____

[15] The court may employ a third option—not at issue here—of partition by appraisal "[w]hen the interests of all parties are undisputed or have been adjudicated," and the parties agree to the approach. (§ 873.910 et seq.)

13

zoning restrictions or may be highly impractical." ' " (*Cummings v. Dessel* (2017) 13 Cal.App.5th 589, 597.)

Every partition action includes a final accounting, including credits and debits to each cotenant, that is governed by principles of equity. (*Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035.) The credits may "include expenditures in excess of the cotenant's fractional share for necessary repairs, improvements that enhance the value of the property, taxes, payments of principal and interest on mortgages, and other liens, insurance for the common benefit, and protection and preservation of title." (*Id.* at pp. 1035-1036.) "The question of the respective rights of tenants in common in partition suits, to the benefit of the enhanced value of land on account of improvements, and of the right to offset the same rents and profits derived, depends upon the facts of a particular case. It involves the questions of good faith, consent of parties, nature of the improvements, the source and amount of rents and profits, and [other] elements." (*Buttram v. Finley* (1946) 73 Cal.App.2d 536, 544.)

Because an action for partition is an equitable proceeding, it is governed by the principle that "[a] court of equity has broad powers and comparatively unlimited discretion to do equity without being bound by any strict rules of procedure." (*Richmond v. Dofflemyer* (1980) 105 Cal.App.3d 745, 766.) We review an interlocutory judgment of partition by sale for abuse of discretion. (*Cummings v. Dessel, supra,* 13 Cal.App.5th at p. 597; see also *Lin v. Jeng* (2012) 203 Cal.App.4th 1008, 1025 ["When a trial court makes a ruling based upon equitable considerations, the abuse of discretion standard applies on review of that ruling"].) The trial court abuses its discretion if the application of the law to the facts is arbitrary and capricious, or the decision rests on an error of law. (*Cummings v. Dessel, supra,* at p. 597)

### 1.    *Request for a Court Reporter*

Diane argues the trial court erred in denying her request for a court reporter on the first day of trial. She claims she made a timely request for a court reporter and implies

14

that she had previously obtained a fee waiver. She also suggests the trial court sought to discourage or prevent her from retaining a private court reporter. None of these arguments are supported by the record.

Rule 2.956(b)(1) provides: "Each trial court must adopt and post in the clerk's office a local policy enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of official court reporters are not normally available during regular court hours. If the services of official court reporters are normally available in a department only for certain types of matters, those matters must be identified in the policy." The Local Rules of the Placer County Superior Court reference rule 2.956 and specify that court reporters are not provided for limited or unlimited civil trials.[16] (Local rule 10.15(A).) The local rules make clear that a litigant who wishes to obtain a record of such a proceeding must arrange for a court reporter at his or her own expense and can do so by calling the court's master calendar unit to request a court-connected court reporter, or by retaining his or her own private certified court reporter. (Local rule 10.15(A).) The local rules also make clear that a court reporter may be provided at court expense upon request by a party with a valid fee waiver on file, subject to an exception not relevant here. (Local rule 10.15(B); see generally *Jameson v. Desta* (2018) 5 Cal.5th 594, 598 [holding that a litigant who "qualifies for a waiver of initial court filing fees is entitled, as well, to a waiver of fees for the attendance of an official court reporter at a hearing or trial"].)

Nothing in the record supports Diane's assertion that she timely requested a court reporter. To the contrary, the record suggests that she made no such request until the afternoon of the first day of trial, after opening statements and some portion of Kevin's

---

[16] Undesignated references to the local rules are to the Local Rules of the Placer County Superior Court.

15

testimony.[17]  That request, coming as it did in the middle of the day's proceedings, cannot reasonably be described as "timely."  To the extent Diane suggests that the trial court had some obligation to anticipate her apparently unspoken interest in arranging for a court reporter, we reject the contention.  We likewise reject Diane's suggestion that the trial court somehow stood in the way of her retaining her own court reporter.  Nothing in the record suggests this was the case, and we perceive no basis for concluding that anyone was to blame for the failure to arrange a court reporter for the first day of trial other than Diane herself.  We therefore reject the claim of error.

  2.      *Denial of a Jury Trial*

Diane argues the trial court erred in denying her a jury trial.  Partition actions are equitable proceedings, and "there is no right to a jury trial in civil actions that are equitable in nature."  (*Meyer Koulish Co. v. Cannon* (1963) 213 Cal.App.2d 419, 430-431; see *American Medical International, Inc. v. Feller* (1976) 59 Cal.App.3d 1008, 1013.)  But even assuming that a jury might have appropriately heard some part of the case, nothing in the record suggests that Diane ever requested a jury or paid the requisite fees.  The claim of error is rejected.

  3.      *Shifting Burden of Proof to Diane*

Diane argues the trial court abused its discretion in shifting the burden of proof to her on the second day of trial.  She argues the trial court acted precipitously, catching her off guard, and giving her no time in which to prepare or call witnesses.   These

---

[17] Diane directs our attention to the minutes for the first day.  But the minutes show only that Diane represented to the trial court that she had previously requested a court reporter. They do not establish that she did so.  To the contrary, the minutes indicate that, "No requests were known to the court."  The trial court's statement of decision similarly states that, "the file reflected no prior demand for a court reporter by [Diane]."  Diane also directs our attention to a "supplementary declaration" made in anticipation of a post-trial hearing in July 2019, some months after the trial.  That request obviously fails to support Diane's claim that she timely requested a court reporter for the first day of trial.

16

arguments have no merit whatsoever. Although we do not have a complete record of the court trial, the record before us shows the case was regularly set for trial, and Diane had ample opportunity to prepare her defense and subpoena any witnesses she may have wanted to call. That Diane may have been unprepared does not establish any abuse of discretion by the trial court.

   4.    *Rebutting the Presumption*

Diane argues the trial court abused its discretion in finding she failed to rebut the presumption that the facts set forth in the deed were true, and the signatures genuine. (See Evid. Code, § 1451 [certificate of acknowledgment "is prima facie evidence of the facts recited in the certificate"]; see also *Jacobson v. Gourley* (2000) 83 Cal.App.4th 1331, 1334 [document entitled to statutory presumption under Evid. Code, § 1451 is authentic unless the adverse party introduces evidence sufficient to sustain a finding that it is not genuine].) She directs our attention to an inconsistency in dates appearing on the face of the deed. Specifically, she notes the deed contains a date line for January 29, 2007, but the notary's acknowledgment indicates that James and Dorothy appeared before the notary on March 6, 2007. Diane does not explain why the discrepancy in dates would have been material, or how they might support her theory that James never signed the deed.[18] We decline to develop such arguments for her.

Diane emphasizes her testimony that she saw an executed but unnotarized deed amongst James and Dorothy's papers, and that James denied signing the deed, and Sally acquiesced in the denial. The trial court considered and rejected this evidence, finding that Diane "was not credible" and "would adopt any factual scenario that she felt would

---

[18] Sally testified that James directed the title company to prepare the deed in January 2007 but discovered an error in the draft deed that necessitated revisions and delayed the signing to March 2007.

delay the proceedings, or defeat her sister's case." We defer to the trial court on issues of credibility. (*Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968.)

5. *Waiver Defense*

Diane argues the trial court erred in failing to credit her defense that Sally waived her right to seek partition. She points to her testimony that James extracted an agreement from Sally that Diane would be allowed to remain on the property.[19] As previously discussed, Sally implicitly denied entering into any such agreement, and testified, instead, that she only agreed to allow Diane to remain on the property until she could get her feet on the ground. The trial court apparently found Sally to be more credible on this point, and we defer to the trial court's credibility determinations. (*Lenk v. Total-Western, Inc., supra,* 89 Cal.App.4th at p. 968.) No abuse of discretion appears.

6. *Fraud Defense*

Diane argues the trial court erred in failing to credit her defense that the deed was procured by fraud. Specifically, she suggests Sally played some sort of professional role in the purchase of the property (she does not say what), and thereby acquired fiduciary duties to James and Dorothy. According to Diane, Sally committed fraud by breaching a fiduciary duty to disclose something about the purchase or the deed to James and Dorothy, or their lender, or all of the above. Diane does not appear to have articulated this theory until after the evidentiary portion of the court trial, in response to the trial court's invitation to make a written offer of proof. That offer of proof proposes to show fraud by a fiduciary through evidence that was excluded during the court trial; namely, evidence that James believed the deed to be invalid and evidence that James and Dorothy

---

[19] She also argues that the trial court should have considered James and Dorothy's wills and should have allowed her to present evidence from witnesses who would have testified to their wishes. We take up these arguments *post*.

18

executed wills bequeathing their estates, first to one another, and then to Diane. However, as we shall discuss *post*, Diane has failed to carry her burden of showing the trial court abused its discretion in excluding this evidence. It follows that she has also failed to show the trial court abused its discretion in rejecting her offer of proof.

7. *Exclusion of Hearsay Evidence of Statements by James*

Diane argues the trial court erred in excluding hearsay evidence regarding statements made by James. She argues the trial court abused its discretion because the evidence was admissible under the hearsay exception for spontaneous statements, an exception she does not appear to have invoked in the trial court. (Evid. Code, § 1240.) She also argues the evidence was relevant (Evid. Code, § 351), and more probative than prejudicial (Evid. Code, § 352). Diane's arguments fail to persuade.

Diane appears to have forfeited any argument that James's statements were admissible as spontaneous statements. But even assuming the argument had been preserved, we would reject it. Evidence Code section 1240's codification of the hearsay exception for spontaneous statements provides: "Evidence of a statement is not made inadmissible by the hearsay rule if the statement: [¶] (a) Purports to narrate, describe, or explain an act, condition, or event perceived by the declarant; and [¶] (b) Was made spontaneously while the declarant was under the stress of excitement caused by such perception." "A spontaneous statement is one made without deliberation or reflection. [Citation.] 'The crucial element in determining whether a declaration is sufficiently reliable to be admissible under this exception to the hearsay rule is . . . the mental state of the speaker. The nature of the utterance—how long it was made after the startling incident and whether the speaker blurted it out, for example—may be important, but solely as an indicator of the mental state of the declarant.' " (*People v. Raley* (1992) 2 Cal.4th 870, 892-893.)

Diane testified that James denied signing the deed over a period of years. She also testified that James and Sally argued about the deed in 2013, some six years after the

19

alleged forgery. But she made no attempt to lay a foundation for the spontaneous statement exception, and nothing suggests that James made any of the challenged statements without deliberation or reflection. The trial court did not abuse its discretion in excluding evidence of James's statements as hearsay.

Diane argues that James's statements were relevant and more probative than prejudicial. That may be so, but does not change the fact that she has failed to show they should not have been excluded on hearsay grounds. We reject the claim of error.

8.      *Exclusion of the Wills*

Diane argues the trial court erred in excluding evidence of James and Dorothy's wills. She argues the wills were relevant inasmuch as they expressed James and Dorothy's wish to leave the property to her. Diane fails to show error.

"A distinctive feature of joint tenancy, as opposed to other interests in land, is the right of survivorship. This means that when one joint tenant dies, the entire estate belongs automatically to the other joint tenant(s). [Citations.] Nothing 'passes' from the deceased joint tenant to the survivor; rather, the survivor takes from the instrument by which the joint tenancy was created." (*Grothe v. Cortlandt Corp.* (1992) 11 Cal.App.4th 1313, 1317.) Consequently, an interest in a joint tenant cannot be devised in a will. (*Estate of England* (1991) 233 Cal.App.3d 1, 4; see also Prob. Code, § 6600, subd. (b)(1).) Diane does not explain why James and Dorothy's wills would be relevant, given that James's interest in the property vested in Sally and Kevin upon his death by operation of law. We decline to develop such arguments for her.

9.      *Due Process*

Diane argues the trial court violated her right to due process by limiting her presentation of defense evidence.[20] She argues the trial court should have given her three

---

[20] Diane raises a great many issues under the umbrella heading of "due process." Most of these issues have already been discussed *ante*. The rest are either forfeited for failure

to five days in which to present her defense, and should have allowed her to call additional witnesses and testify as an expert in real estate law. She also argues the trial court should have granted her request for a continuance. Diane's arguments lack merit.

Due process does not prohibit the trial court from imposing reasonable limitations on the presentation of evidence. (See *People v. Marshall* (1996) 13 Cal.4th 799, 836 [due process right to present evidence is limited to relevant evidence of significant probative value to the issue before the court].) Nothing in the record before us suggests the limitations on Diane's presentation were anything but reasonable. Diane received wide latitude to present narrative testimony and examine witnesses, which consumed almost an entire court day. She spent much of this time on irrelevant matters, such as airing family grievances and making Sally out to be a bad person. She ignored pleas to stick to the issues at hand and was unable or unwilling to respond to requests for offers of proof. Diane suggests no reason why she should have been allowed to carry on in this fashion and makes no attempt to explain how additional witnesses or trial time would have meaningfully advanced her cause.[21] Nor does she attempt to demonstrate that she ever made the requisite showing of good cause for a continuance, or that her knowledge of real estate law was an appropriate subject for expert testimony. (*People v. Jenkins* (2000) 22 Cal.4th 900, 1037 [party seeking a continuance must make a showing of good

_____

to provide proper headings or unintelligible. (See *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].)

[21] Diane proposed to call a witness to vouch for her credibility, which was unnecessary, given that Sally and Kevin stipulated the witness would so testify. She also proposed to call a neighbor to testify to family dynamics, which does not appear relevant. She also proposed to call officials from James and Dorothy's church, apparently to testify to the circumstances surrounding the signing of their wills. This testimony does not appear relevant either.

cause, which includes a demonstration that the party has prepared for the trial with due diligence but could not obtain essential testimony, documents, or other material evidence]; *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1178 ["There are limits to expert testimony, not the least of which is the prohibition against admission of an expert's opinion on a question of law"].)  No abuse of discretion or violation of due process appears.

## D.     *Challenges to Post-Trial Orders*

Diane challenge three posttrial orders:  (1) the trial court's order appointing a referee to oversee the partition by sale of the property; (2) the trial court's order apportioning attorney's fees under section 874.040; and (3) the trial court's order denying her motion to set aside the judgment.  We consider these arguments seriatim.

### 1.     *Order Appointing Referee*

Following the evidentiary portion of the court trial, Sally and Kevin moved for the appointment of a referee to oversee the contemplated partition by sale.  They proposed a local real estate broker, Kate Tustin.  Diane objected to the appointment of Tustin but did not suggest an alternative.  The trial court appointed Tustin as referee on April 18, 2019. Tustin then supervised the sale of the property and the distribution of the sale proceeds.

Diane challenges the appointment of the referee, arguing that Tustin labored under a conflict of interest.  She observes that Tustin submitted declarations on pleading paper bearing the name of Sally and Kevin's attorney.  She suggests that Sally and Kevin's attorney worked with Tustin to prepare her declarations.  She also implies that Tustin may have been in league with her former employer, possibly through one or more title companies.

Diane does not suggest that anything in Tustin's declarations was false or misleading.  Nor does she suggest that Tustin breached any duty as referee (e.g., by failing to sell to the highest bidder or failing to appropriately distribute the proceeds of the sale).  We reject the claim of error.

22

## 2. *Order Awarding Attorney's Fees*

The trial court found that Sally and Kevin's attorney's fees were incurred for the common benefit and ordered them equally apportioned among the parties pursuant to section 874.040. Diane argues the trial court erred in finding that Sally and Kevin's attorney's fees were incurred for the common benefit. She also suggests that the trial court should have required Sally and Kevin bear their own fees as a matter of equity. We are not persuaded.

Section 870.040 requires the trial court to "apportion the costs of partition among the parties in proportion to their interests or make such other apportionment as may be equitable."[22] The costs of partition include "[r]easonable attorney's fees incurred or paid by a party for the common benefit." (§ 874.010, subd. (a).) We review fee awards for abuse of discretion. (*Orien v. Lutz* (2017) 16 Cal.App.5th 957, 966.) There was no abuse of discretion here.

Section 874.040 gives the trial court discretion to apportion attorney's fees incurred for the common benefit based on either the parties' respective interests in the property *or* equitable considerations. (*Lin v. Jeng, supra,* 203 Cal.App.4th at p. 1025.) Diane suggests Sally and Kevin's attorney's fees were not incurred for the common benefit, because she opposed the partition action. Diane's argument rests on a misunderstanding of the phrase "common benefit."

Our Supreme Court has long recognized that fees and costs may still be for the "common benefit" even though they have been incurred in matters "controversial in nature." (*Capuccio v. Caire* (1932) 215 Cal. 518, 528.) In *Capuccio v. Caire,* our Supreme Court analyzed the "common benefit" provision of section 796, the predecessor

---

[22] Section 874.040 provides in its entirety, "Except as otherwise provided in this article, the court shall apportion the costs of partition among the parties in proportion to their interests or make such other apportionment as may be equitable."

of section 874.010, and explained that distribution of the proceeds from sale is an inherent part of a partition proceeding and thus an act for the common benefit of the parties to the action, " 'regardless of whether or not there had arisen and been litigated controversies either over the question as to whether or not the parties to the action were cotenants or over the extent of their respective interests as such in the property thus sought to be divided.' " (*Capuccio v. Caire, supra,* at p. 526.) Litigation ceases to be for the "common benefit" when it " 'arises between some of the parties only,' " or when one party seeks to deny any benefit to the other parties. (*Id.* at p. 529; see *Williams v. Miranda* (1958) 159 Cal.App.2d 143, 158.) That was not the case here.

Diane argues the trial court abused its discretion in declining to base attorney's fees on equitable considerations. Diane appears to assume that equity would have required that Sally and Kevin bear all attorney's fees incurred in the partition action, while she would bear none. We are not so sure. We note that Diane appears to have taken many meritless positions in the trial court, all of which served to unnecessarily prolong the litigation and increase fees. We cannot say that equity would have required the allocation of fees that Diane envisions. We need not decide the matter, however, as we perceive no abuse of discretion in the trial court's decision to allocate fees according to the parties' proportionate shares in the property.

### 3. *Order Denying Motion to Set Aside the Judgment*

Finally, Diane argues the trial court erred in denying her motion for relief from the judgment based on newly discovered evidence. Diane's motion was purportedly based on Rule 60 of the Federal Rules of Civil Procedure, which obviously does not apply here. (See *Ticconi v. Blue Shield of Cal. Life & Health Ins.* (2008) 160 Cal.App.4th 528, 546.) But even assuming the motion had been appropriately styled, we would reject the claim of error, as Diane fails to carry her burden on appeal. She offers no authority showing that the motion was timely, and no argument demonstrating that the newly discovered

24

evidence was material and could not have been produced at trial with reasonable diligence. We reject the claim of error.

### III. DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal. (Rule 8.278(a)(1) & (2).)


/S/

                    RENNER, J.


We concur:

/S/

BLEASE, Acting P. J.


/S/

HULL, J.