[L. A. No. 19018. In Bank. Nov. 24, 1944.]

R. L. RICE, Appellant, v. AUGUSTA SCHMID, as Administratrix, etc., et al., Respondents.

H. M. Lineman, Mab Copland Lineman and Benjamin Lewis for Appellant.

W. W. Wallace for Respondents.

GIBSON, C. J.—On a prior appeal by plaintiff (18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589])a judgment for $712.45 for breach of a contract to purchase flour was reversed with directions, and thereafter a second judgment for $190 was entered. Plaintiff, asserting the trial court failed to follow such directions, has appealed for the second time.

On July 16, 1937, plaintiff, a wholesale flour merchant, entered into a written contract with John Schmid, the proprietor of the Eagle Bakery, in which he agreed to sell to Schmid 6,000 barrels of flour at the following prices:

| Barrels | Price per barrel |
|---|---|
| 2,000 "Ravalli" brand wheat flour at....... | $7.10 |
| 2,750 "Gold Cross" brand wheat flour at.... | 7.65 |
| 1,250 "Isis" brand wheat flour at......... | 7.15 |

The contract provided that shipment was to be made upon instructions from the buyer within ninety days from the date of the contract. The contract was to be automatically extended if, on account of the fault of the buyer, not all of the flour was shipped within the ninety-day period unless the seller chose to terminate it upon that ground. At the time plaintiff made his contract with Schmid, he (plaintiff) entered into a second contract with a mill for the purchase of the flour at a price which would leave him a margin of profit.

A portion of the flour had been delivered under the terms of the contract when John Schmid sold the Eagle Bakery to the defendants Anthony Marik, Felix Marik, John A. Dull and E. A. Osterman, who assumed the obligations of Schmid's contract with plaintiff. Further deliveries of flour were made to the Eagle Bakery under the contract until a total of 3,245 barrels had been delivered. On December 2, 1938, defendants

having failed and refused to order the balance of the flour, plaintiff elected to terminate the contract, pursuant to its terms, and to hold defendants liable for the breach.

After the commencement of this action, defendant John Schmid died, Augusta Schmid was substituted as administratrix of his estate, and a supplemental complaint was filed alleging the presentation and rejection of a claim against the estate.

On the first trial, the court found that defendants had breached the contract and gave judgment for the plaintiff against all defendants. In arriving at the amount of damages, the court rejected plaintiff's claim for liquidated damages as specified in the contract, and computed plaintiff's damages on the basis of the difference between the price Schmid agreed to pay plaintiff and the price plaintiff agreed to pay the mill.

Plaintiff, being dissatisfied with the judgment, appealed. We held (18 Cal.2d 382) that although the trial court correctly determined that this was not a proper case for liquidated damages it used an erroneous measure of damages in arriving at its decision. We pointed out that plaintiff was entitled to recover the difference between the contract price and the *market price* at the time when the goods should have been accepted. The judgment was reversed ''with directions to the trial court to determine the damages in accordance with the rules herein set forth and thereafter to enter judgment in favor of plaintiff.'' Defendants, stating they were in agreement with the principles of law enunciated in our opinion, petitioned for a change in the form of our order from a reversal with directions to outright reversal. But as defendants had not appealed, and as the only issue raised by plaintiff in his appeal was the determination of the proper measure of damages, the petition was denied.

After the remittitur was filed, plaintiff made a motion in the trial court to have damages computed pursuant to the ruling of this court, and for judgment for plaintiff in accordance with such determination. The motion was denied, the matter was set for hearing, and additional evidence was received over the objection of plaintiff. A second judgment, from which this appeal is taken, was then entered for plaintiff, apparently based on the finding that plaintiff should have made delivery on October 15, 1937, the ninety-first day after the contract was made, that the difference between the market price and the contract price on October 15, 1937, was 95 cents

per barrel, and that plaintiff then had on hand only 200 barrels. The court concluded that plaintiff was entitled to recover only the difference in price for 200 barrels.

 The interpretation of the contract by the court on the second trial and the conclusions of law with reference thereto are in direct conflict with our decision in 18 Cal.2d 382 [115 P.2d 498, 138 A.L.R. 589], and are contrary to well-established rules of law. (See 18 Cal.2d 382, at p. 388; and cases cited in annotations in 44 A.L.R. 215, 108 A.L.R. 1482 and 120 A.L.R. 1192.)

It was held on the prior appeal that under the terms of the contract defendants' obligation to accept the flour continued until the termination of the contract; that "the damages should be the difference between the contract price and the market price on the date of the final termination of the contract"; and that plaintiff was not bound to keep on hand at all times sufficient flour to fulfill the terms of the contract but that he "was free to wait and procure flour at the market price when ordered by the buyer."

The contract provided that "The buyer shall furnish the seller, at least ten (10) days before the time for such shipment, complete shipping instructions." This provision and the conduct of the parties show that it was never intended that the seller should at all times have on hand in his warehouse sufficient flour to fulfill the contract, but that he was to have at least ten days in which to make any delivery requested by the buyers. Since there is no claim of any default on the part of plaintiff in making deliveries as requested, the fact that he had only 200 barrels on hand, or that he did not have any flour on hand at a given time, is wholly immaterial and cannot furnish any basis for a finding that he could not deliver the flour as required by the contract. As was held on the prior appeal (18 Cal.2d 382, 388), "plaintiff's only obligation was to procure flour of the specified brands, whether from the miller or on the market, for delivery in accordance with shipping instructions to be furnished him by the defendants. He was free to enter into a contract with a manufacturer to protect himself or to speculate upon a decline in the market before delivery would be required." Defendants, having obtained extensions of time and having finally refused to give shipping instructions as requested, were in no position to complain because plaintiff refrained from adding to

his damages by warehousing flour which defendants were not prepared to accept. There was no evidence whatever to indicate that plaintiff was or might have been unable to perform but, on the contrary, the facts, including the making of a contract with the miller, show that the plaintiff was ready, able and willing to perform and would have done so if defendants had given the requested instructions. ■ This matter should not have been considered on the second trial which, as pointed out herein, should have been limited to the issue of damages; but even if it had been properly raised, there was no evidence to support a finding that plaintiff was unable to perform his part of the contract.

On the second trial, the court made a further finding to the effect that there was no breach of the contract by John Schmid, deceased, and concluded that judgment should be entered in favor of the estate. This is, of course, directly contrary to the findings and judgment in the first case which was in favor of plaintiff against all defendants. Moreover, there was no evidence introduced at the second trial which would justify releasing the estate from liability under the contract made by the deceased.

■ Where a reviewing court reverses a judgment with directions to determine damages in accordance with the rules set forth in its opinion and to enter judgment for the plaintiff, the trial court is bound by the directions given and has no authority to retry any other issue or to make any other findings. Its authority is limited wholly and solely to following the directions of the reviewing court. (*Cowdery* v. *London etc. Bank,* 139 Cal. 298, 307 [73 P. 196, 96 Am.St.Rep. 115]; *Weaver* v. *San Francisco,* 146 Cal. 728, 732 [81 P. 119]; *English* v. *Olympic Auditorium, Inc.,* 10 Cal.App.2d 196, 201 [52 P.2d 267].) The trial court should have followed the directions of this court and entered judgment for plaintiff against all the defendants for the difference between the contract price and the market price of the flour on December 2, 1938, for the total number of undelivered barrels of flour.

It is undisputed that prior to December 2, 1938, defendants had ordered and received a total of 3,245 barrels of flour, leaving 2,755 barrels to be delivered, consisting of 688 barrels of "Ravalli" brand, 1,593 barrels of "Gold Cross" brand, and 474 barrels of "Isis" brand. It appears, however, that there is a conflict in the evidence as to the market price of each of the brands of flour on December 2, 1938, and since

no finding is made by the court resolving this conflict the case must be remanded a second time for the purpose of ascertaining that price. The trial court may, of course, take such additional evidence as may be necessary to determine this issue.

The judgment is reversed, with directions to the trial court (1) to ascertain the difference, on December 2, 1938, between the market price and the contract price for each brand of flour specified in the contract; (2) to compute the amount of plaintiff's damages by multiplying the total number of undelivered barrels of each brand of flour by the difference in price so found for that brand of flour; and (3) thereafter to enter judgment in favor of plaintiff and against all defendants for the amount of such damages.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Schauer, J., concurred.