[No. C051198. Third Dist. Dec. 20, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
SARAH ELIZABETH DUTRA, Defendant and Appellant.

**COUNSEL**

Ann Hopkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Mathew Chan and Catherine G. Tennant, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MORRISON, J.**—In a prior opinion we affirmed Sarah Elizabeth Dutra's felony convictions. (*People v. Dutra* (May 18, 2005, C044075) [nonpub. opn.] (*Dutra I*).) *Based on an explicit concession at oral argument by the Attorney General* we gave the People the option of accepting a midterm sentence on manslaughter, or "a remand for a sentencing trial." (*Dutra I,*

*supra*, C044075.) The People did not accept the midterm sentence or petition for rehearing or review. The remittitur ordered a sentencing trial.

Because of an intervening decision of the California Supreme Court—*People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534] (*Black*)—the trial court did not conduct such a trial. Dutra appealed.

The Attorney General takes the view that although *Dutra I* represented "law of the case," an exception to the law of the case doctrine exists for changes in the governing law, and the *Black* decision represents such a change, authorizing the trial court to disobey our remittitur. We disagree.

■ The trial court was bound not by law of the case but by the terms of our remittitur. A trial court may not disobey a remittitur, as that would amount to overruling the appellate court's decision, thereby violating a basic legal principle: "Courts exercising inferior jurisdiction must accept the law declared by courts of superior jurisdiction. It is not their function to attempt to overrule decisions of a higher court." (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

The term of the remittitur should have been obeyed by the trial court.

We recognize that under *Black, supra*, 35 Cal.4th 1238, a sentencing trial is not ordinarily necessary before a trial court may impose an upper term sentence under the determinate sentencing law (DSL). However, the apparent anomaly in ordering such a trial for Dutra is largely of the Attorney General's making. First, at oral argument in *Dutra I*, the Attorney General conceded such a trial was necessary. Because the law was not settled at that time, we accepted the concession as an exercise of prosecutorial discretion. Second, the Attorney General did not petition for rehearing to clarify or withdraw the concession and did not petition for review to preserve the issue, which was then pending before the California Supreme Court. The result was the issuance of the remittitur. Although the result gives Dutra more protections than other defendants, specifically, a jury trial on sentencing factors, that does not equate to a miscarriage of justice for her or the People.

We will vacate the sentence with directions.

## BACKGROUND

In this high publicity case, Dutra, a young college student, fell under the sway of con artist Laren Jordan Sims, who had married Attorney Larry

McNabney and taken control of his affairs. Sims used slow poison to kill McNabney on September 11, 2001; Dutra helped Sims move him, failed to call the police although McNabney was still alive, helped Sims hide the body and helped conceal the fact of his death. McNabney's body was found on February 5, 2002. Sims was arrested in Florida but killed herself before she could be extradited, leaving Dutra to face special circumstance murder charges. The jury convicted Dutra of voluntary manslaughter and accessory after the fact to murder. The trial court imposed the upper term of 11 years for the manslaughter charge. (*Dutra I*, *supra*, C044075.) On May 14, 2003, Dutra timely filed a notice of appeal.

On June 24, 2004, the United States Supreme Court decided *Blakely v. Washington* (2004) 542 U.S. 296 [159 L.Ed.2d 403, 124 S.Ct. 2531] (*Blakely*), holding that the Sixth Amendment entitled a Washington defendant to a jury trial on sentencing factors.

On March 21, 2005, we conducted oral argument in *Dutra I*.

On May 18, 2005, we issued *Dutra I*, rejecting her attacks on her convictions. Dutra had also claimed that *Blakely, supra*, 542 U.S. 296, applied to the DSL. We stated in part: "At oral argument the Attorney General conceded the case had to be reversed for resentencing under *Blakely*. We agree in part. [¶] . . . The Attorney General conceded at argument that the sentencing factors relied on by the trial curt were contested, therefore, we cannot find the error harmless." (*Dutra I*, *supra*, C044075.) We then elaborated by summarizing the trial court's sentencing comments and describing the positive and negative facts about Dutra in the record. (*Ibid.*)

Noting that the midterm was six years, we observed that the People, "in consultation with the San Joaquin District Attorney" could either accept the midterm by filing a request for modification of the sentence or they could do nothing, in which case "the remittitur will affirm the convictions and order a remand for a sentencing trial." (*Dutra I*, *supra*, C044075.)

Dutra filed a petition for review with the California Supreme Court, challenging her convictions. The People did not petition for rehearing or review of our decision.

On June 20, 2005, the California Supreme Court decided *Black*, holding the DSL was unlike the law at issue in *Blakely, supra*, 542 U.S. 296, and that no jury trial on aggravating factors was required in California. (*Black, supra*, 35 Cal.4th 1238.)

On August 17, 2005, the California Supreme Court denied Dutra's petition for review. Accordingly, on August 23, 2005, our remittitur issued.

On September 12, 2005, the cause was set for a hearing in the trial court. The trial court had received an ex parte letter from the deputy attorney general who had conceded the *Blakely* issue, addressed to the district attorney, stating without analysis that *Black*, 35 Cal.4th 1238, vitiated our remittitur.

At the hearing, Dutra's former appellate counsel argued that the trial court was obliged to follow the remittitur. The trial court stated his view that *Black, supra*, 35 Cal.4th 1238 applied:

"THE COURT: . . . Therefore, I'm going to rule that the defendant is not entitled to a jury trial.

"MS. THOMAS: May I—

"THE COURT: Don't interrupt. [¶] The defendant is not entitled to a jury trial on the issues of fact and, therefore, the sentencing would stand. And she's not entitled to any further hearing."

Dutra timely filed her appeal.

## DISCUSSION

### I.

Dutra argues the *Black* decision is wrong and she wants to preserve the issue for further review, pending the decision in *Cunningham v. California*, No. 05-6551, argued recently in the United States Supreme Court.[*] The issue is preserved.

### II.

We first describe the law of the case doctrine, which applies in both civil and criminal cases:

" ' "The doctrine of the law of the case is this: That where, upon an appeal, the [reviewing] court, in deciding the appeal, states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout its subsequent progress,

---

[*]Reporter's Note: *Cunningham v. California* (2007) 549 U.S. ___ [166 L.Ed.2d 856, 127 S.Ct. 856].

both in the lower court and upon subsequent appeal, and, as here assumed, in any subsequent suit for the same cause of action, and this although in its subsequent consideration this court may be clearly of the opinion that the former decision is erroneous in that particular." ' The principle applies to criminal as well as civil matters . . . .

"The principal reason for the doctrine is judicial economy. 'Finality is attributed to an initial appellate ruling so as to avoid the further reversal and proceedings on remand that would result if the initial ruling were not adhered to in a later appellate proceeding.' [Citation.] Because the rule is merely one of procedure and does not go to the jurisdiction of the court [citations], the doctrine will not be adhered to where its application will result in an unjust decision, e.g., where there has been a 'manifest misapplication of existing principles resulting in substantial injustice' [citation], or the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations [citation]. The unjust decision exception does not apply when there is a mere disagreement with the prior appellate determination." (*People v. Stanley* (1995) 10 Cal.4th 764, 786–787 [42 Cal.Rptr.2d 543, 897 P.2d 481] (*Stanley*).)

A mistaken ruling is not enough to avoid the doctrine: "Indeed, it is only when the former rule is deemed erroneous that the doctrine of the law of the case becomes at all important." (*Tally v. Ganahl* (1907) 151 Cal. 418, 421 [90 P. 1049]; quoted with approval in *Morohoshi v. Pacific Home* (2004) 34 Cal.4th 482, 491 [20 Cal.Rptr.3d 890, 100 P.3d 433].) But for purposes of argument we accept that *Black, supra*, 35 Cal.4th 1238, would invoke the exception to the law of the case doctrine. However, that conclusion does not resolve this case.

As stated above, the law of the case doctrine "does not go to the jurisdiction of the court" *and for that reason* "will not be adhered to where its application will result in an unjust decision, e.g., where . . . the controlling rules of law have been altered or clarified by a decision intervening between the first and second appellate determinations." (*Stanley, supra*, 10 Cal.4th at p. 787.) Here, as we explain, the applicable rule does go to the trial court's jurisdiction.

■ Penal Code section 1260 provides that in a criminal appeal: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if

proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

Penal Code section 1262 provides in part that "If a judgment against the defendant is reversed, such reversal shall be deemed an order for a new trial, unless the appellate court shall otherwise direct." Here we otherwise directed.

■ After the remittitur "the appellate court has no further jurisdiction of the appeal or of the proceedings thereon, *and all orders necessary to carry the judgment into effect shall be made by the court to which the certificate is remitted.*" (Pen. Code, § 1265, italics added.) Thus, the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court.* The same is true in civil cases. (Code Civ. Proc., §§ 43, 906, 912; see 6 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Appeal, § 167, p. 413 [criminal and civil rules the same].)

This rule sometimes overlaps with the law of the case doctrine, leading some courts to discuss the two rules together:

"Where a reviewing court reverses a judgment with directions to enter judgment for the plaintiff, the trial court is bound by the directions given. Its authority is limited wholly and solely to following the directions of the reviewing court. [Citation.] Any judgment rendered contrary to such specific directions would be void. [Citation.] When there has been a decision on appeal, the trial court is reinvested with jurisdiction of the cause, but only such jurisdiction as is defined by the terms of the remittitur. The trial court is empowered to act only in accordance with the direction of the reviewing court; action which does not conform to those directions is void. *The judgment directed by the reviewing court is the law of the case and is controlling on the jurisdiction of the trial court.* [Citation.]

"If it be assumed, as petitioner contends, that the order of the appellate department reversing the judgment in his favor should not have included a direction for the entry of a final judgment in favor of [real party in interest], the error was judicial. Petitioner should have applied for rehearing. If a court of review inadvertently omits to include in its instructions to a trial court on the reversal of a judgment essential elements within the issues necessarily determined on the appeal, the aggrieved party has his remedy in a petition for rehearing." (*Stafford v. Municipal Court* (1960) 180 Cal.App.2d 368, 370–371 [4 Cal.Rptr. 441], italics added.)

In the italicized portion of this passage, the court noted that the judgment of the appellate court was "law of the case" *and* controlled the jurisdiction of

the trial court. This portion of the quotation is potentially misleading because it discusses two different concepts in one ambiguous sentence. The terms of the remittitur define the trial court's jurisdiction, not law of the case. The force of the remittitur does not depend on, nor is it limited by the law of the case: "Where a reviewing court reverses a judgment with directions . . . the trial court is bound by the directions given and has no authority to retry any other issue or to make any other findings. Its authority is limited wholly and solely to following the directions of the reviewing court." (*Rice v. Schmid* (1944) 25 Cal.2d 259, 263 [153 P.2d 313] (*Rice*); see *Tsarnas v. Bailey* (1962) 205 Cal.App.2d 593, 595 [23 Cal.Rptr. 336]; *Carter v. Superior Court* (1950) 96 Cal.App.2d 388, 391 [215 P.2d 491] ["The courts have repeatedly adhered strictly to the rule. . . . Any proceedings had or judgment rendered contrary to such specific directions would be void"].)

■ "The appellate court clerk's issuance of the remittitur effects the transfer of jurisdiction to the lower court. [Citation.] The reviewing 'court has no appellate jurisdiction over its own judgments, and it cannot review or modify them after the cause has once passed from its control by the issuance of the remittitur' [citation], although in very limited circumstances the remittitur may be recalled. ([Cal. Rules of Court, former r]ule 25(d).) At the same time, the terms of the remittitur define the trial court's jurisdiction to act. 'The order of the appellate court as stated in the remittitur, "is decisive of the character of the judgment to which the appellant is entitled." ' " (*Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 774, fn. 5 [98 Cal.Rptr.2d 1, 3 P.3d 286] (*Snukal*); see *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701 [107 Cal.Rptr.2d 149, 23 P.3d 43]; *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982 [128 Cal.Rptr.2d 403] [directions are "binding on the trial court and *must* be followed. Any material variance . . . is unauthorized and void"].)

According to the California Supreme Court, the rule requiring a trial court to follow the terms of the remittitur *is jurisdictional,* unlike the law of the case doctrine. (*Snukal, supra,* 23 Cal.4th at p. 774, fn. 5; *Rice, supra,* 25 Cal.2d at p. 263.) Therefore, whether the trial court believed our decision was right or wrong, or had been impaired by subsequent decisions, it was bound to follow the remittitur. (See also *People v. Lincoln* (2006) 144 Cal.App.4th 1016 [50 Cal.Rptr.3d 855]; *In re Terrance B.* (2006) 144 Cal.App.4th 965 [50 Cal.Rptr.3d 815].)

The People devote their brief to a discussion of law of the case and do not analyze the law regarding adherence to a remittitur. They do rely on one case in support of the trial court's actions herein: *People v. Sequeira* (1982) 137 Cal.App.3d 898 [188 Cal.Rptr. 470] (*Sequeira*). We find that case inapposite

because it fails to discuss the rule that a trial court must obey a remittitur; it discusses only the law of the case doctrine.

Sequeira was convicted of several felonies, including armed robbery. The convictions were affirmed but the cause was remanded for resentencing because the appellate court concluded the sentence exceeded legal limits: Based on then existing authority, armed robbery arguably did not qualify as a violent felony for purposes of sentencing. (*Sequeira, supra,* 137 Cal.App.3d at pp. 899–900.) After Sequeira's appeal was decided but before the remittitur issued, the California Supreme Court held armed robbery *was* a violent felony for sentencing purposes. With the benefit of that decision, the appellate court would not have remanded the matter for resentencing. (*Id.* at p. 900.)

The trial court in *Sequeira* followed the remittitur, stating it was bound by " 'law of the case *and the ruling of the appellate court,*' " (italics added) and resentenced Sequeira; however, upon the People's appeal, the court stated, "The *only* issue of the appeal is whether the superior court erred in its application of the doctrine of law of the case . . . ." (*Sequeira, supra,* 137 Cal.App.3d at p. 900.)

This statement was not correct. *One* issue was law of the case, but the *Sequeira* trial court had also stated, correctly, that it was bound to follow the appellate ruling. Nowhere does *Sequeira* discuss a trial court's duty to obey a remittitur. Cases are not authority for propositions not considered. (*Hart v. Burnett* (1860) 15 Cal. 530, 598.) Thus, *Sequeira, supra,* 137 Cal.App.3d 898, does not support the People's assertion that the trial court properly declined to obey the remittitur in this case.

If a remittitur is *ambiguous* the trial court can interpret it in light of the law and the appellate opinion to determine its duties. (See *Combs v. Haddock* (1962) 209 Cal.App.2d 627, 631 [26 Cal.Rptr. 252].) Here, however, the remittitur was not ambiguous.

We also point out that upon the filing of the *Black* decision there was nothing this court could do. We lack the power to recall a remittitur to correct judicial error—meaning our mistake in accepting the Attorney General's concession at oral argument, which in hindsight proved improvident. (*People v. Randazzo* (1957) 48 Cal.2d 484, 488 [310 P.2d 413].)

The dissenting opinion reasons that we lack the power to reverse because no "miscarriage of justice" has taken place. We disagree. The California Supreme Court has explained that a trial court's *jurisdiction* to act on remand

from a higher court is defined by the remittitur. (*Snukal, supra,* 23 Cal.4th at p. 774, fn. 5; *Rice, supra,* 25 Cal.2d at p. 263.) In effect, once the remittitur issued Dutra had a legal right to a sentencing hearing. The trial court deprived her of that right in an act made wholly outside the trial court's jurisdiction. That, in our view, is a miscarriage of justice, at least insofar as Dutra is concerned.

### III.

Not only did Judge Garber adopt the view of the ex parte letter from Deputy Attorney General Catherine A. Tennant, he cut off Dutra's former appellate counsel, Cynthia A. Thomas, when she tried to explain her position, and later refused her request to brief the issue. In order to forestall any claim of undue embroilment, the matter shall be assigned to a different judge on remand. (Code Civ. Proc., § 170.1, subd. (c).)

### DISPOSITION

The sentence is vacated and the cause remanded to the trial court for further proceedings consistent with this opinion.

Blease, Acting P. J., concurred.

**SIMS, J.,** Dissenting.—I respectfully dissent.

I agree the trial court erred in failing to follow the directive of our remittitur and to give defendant a sentencing trial.

I also agree that the doctrine of law of the case did not apply in the trial court. But it applies in this court. However, the doctrine is subject to an exception. Here, the controlling rule of law with respect to sentencing trials has been altered or clarified by a decision intervening between defendant Dutra's first appeal and this one. (See *People v. Stanley* (1995) 10 Cal.4th 764, 787 [42 Cal.Rptr.2d 543, 897 P.2d 481].) The new decision is *People v. Black* (2005) 35 Cal.4th 1238 [29 Cal.Rptr.3d 740, 113 P.3d 534]. Under *Black,* defendant Dutra is not entitled to a sentencing trial. (*Id.* at p. 1244.)

The California Constitution commands that we may set aside a judgment "for any error as to any matter of procedure" only if we are of the opinion "that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

There is no miscarriage of justice here. Under current law, defendant Dutra is not entitled to a sentencing trial. Indeed, the majority give her a procedural right not available to the vast majority of defendants. There is an unfairness here, but it is not to Ms. Dutra. Rather, it is to the prosecutor and the trial court, who must give Ms. Dutra a trial to which she is not entitled.

I dissent.