Filed 10/23/24  In re C.K. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re C.K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, | D083203 |
| Plaintiff and Respondent, | (Super. Ct. No. J243867) |
| v. | |
| C.K., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Robert J. Trentacosta, Judge.  Reversed and remanded with directions.

Jill M. Kent, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa A. Mandel and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

In *In re C.K.* (Sept. 19, 2023, D080341) [nonpub. opn.], this court reversed a portion of a juvenile court restitution order imposed on defendant

and appellant C.K., after he had admitted to selling or furnishing a controlled narcotic substance (Health & Saf. Code, § 11352, subd. (a)), that caused the death of another juvenile, C.W.  The trial court had ordered that C.K. pay C.W.'s family restitution in the amount of $36,822.38, which included $18,641.22 for a burial plot in which C.W.'s predeceased uncle was also buried.  We agreed with the defendant that "the court should have ordered an offset in the costs related to the burial plot."  (*In re C.K.*, *supra*, D080341.) We reversed the order in part, holding that ordering C.K. to pay the entire cost of the burial plot "gives C.W.'s family a windfall," observed the trial court "did not narrowly tailor the amount of the costs C.K. should pay," and directed the court on remand "to recalculate C.K.'s share of the burial plot costs, and issue a new restitution order consistent with this opinion."  (*Ibid.*) Following remand, the trial court conducted a new evidentiary hearing and ordered C.K. to again pay as restitution the full cost of the burial plot in the amount of $19,487.12, stating the "facts and the law" supported that award.

In this appeal, C.K. contends we must again reverse the trial court's order because it did not abide by this court's unambiguous instructions in the remittitur.  We agree.  While the court did not err by conducting a new evidentiary hearing, our prior decision that C.W.'s family would obtain a windfall by a restitution award for the entire cost of the interment—reflected in a contract for two "interment rights"—was not open for reconsideration. Because its order otherwise is void, we reverse with directions that the court order C.K. to pay as restitution one half of the value allocated to C.W.'s interment: $9,743.56.

2

FACTUAL AND PROCEDURAL BACKGROUND

We need not restate the facts underlying C.K.'s conviction, which are recounted in our prior opinion. (*In re C.K.*, *supra*, D080341.) Relevant to this appeal are the restitution proceedings, during which the trial court considered defense counsel's argument that ordering C.K. to pay the entire cost of C.W. and his uncle's burial plot was "akin to a windfall for the uncle's estate," as well as the prosecution's proffer of testimony that would show the burial plot was a "flat rate" in that it did not matter how many family members would be buried in it: " 'It does not matter if one descent [*sic*] or two or four or ten are put in that plot. That plot is going to cost approximately $19,000 no matter what." (*Ibid*.)

C.K. contended in his first appeal that the trial court abused its discretion by ordering him to pay the entire cost of the burial plot without ordering an offset for the other family member. (*In re C.K.*, *supra*, D080341.) He maintained the order was "not related to the offense or conviction, nor does it act as an appropriate deterrent or rehabilitative measure" and "therefore, his portion of the burial plot cost should be halved." (*Ibid*.)

We "agree[d] the court should have ordered an offset in the costs related to the burial plot." (*In re C.K.*, *supra*, D080341.) Observing a restitution order was not intended to provide a victim with a windfall, we held "[t]he court did not narrowly tailor the amount of costs C.K. should pay" and reversed the portion of the order dealing with the burial plot costs. We "remand[ed] for the court to conduct further proceedings and reapportion C.K.'s share of those costs." (*Ibid*.) Our disposition reads: "We reverse the portion of the restitution order relating to the burial plot costs, and otherwise affirm. On remand, the court is directed to recalculate C.K.'s share of the

3

burial plot costs, and issue a new restitution order consistent with this opinion."

On remand, the trial court acknowledged this court's decision and stated it intended to be bound by it. At the People's request and over defense counsel's objection, it accepted new briefing and conducted a new restitution hearing to take evidence limited to the cost of the burial plot.[1]

C.W.'s mother testified she bought the plot primarily for her son, and it cost $19,487.12. She was told the plot would cost the same flat rate even if just her son was buried there, and she decided to put her brother's urn in it as well. On cross-examination, she testified her brother's estate paid only for a marker, and that if she was to bury her brother elsewhere, she and her siblings, who were his beneficiaries, would have to pay for a different plot.

The cemetery general manager testified that in the section C.W.'s mother chose, "when a family selects this grave, one plot, we give two internments [*sic*] for that one space." The following exchange took place:

"[Prosecutor:] So, in this particular situation, if you were to assume that . . . [C.W.'s] uncle[ ] was taken out of the equation and that it was only just one internment [*sic*] right, what would the cost be?

"[General manager:] It would be $16,500.

"[Prosecutor:] Why?

"[General manager:] We have many families that come in and they select an area just for one burial, but we have to show that it's for two internments [*sic*] for documentation *so they can come in and do a second internment* [*sic*] *later on.*

---

[1] At that hearing, counsel agreed that the cost of the plot as reflected in the restitution briefing was $19,487.12, which differed from the $18,641.22 figure appearing in our prior opinion. The invoice from the memorial park reflects a total cost of $19,487.12 including fees and sales tax.

"[Prosecutor:] So, no matter what, one or two, it would be the same price. There is no discount because it would just be for one."

The general manager explained that he had to show an $8,250 unit price for each interment: "That's why the contract automatically breaks that up for two units, per unit price and then gross price, because there's two units for that." He testified despite that invoice, the uncle's placement in the plot had no effect on the price, and the invoice would not change if only the son were buried in the plot.[2] On cross-examination, the general manager agreed that while $16,500 was a flat rate for the plot, that cost was for two interments; if the family wanted to add more than two individuals, they would have to pay more, and if they wanted to take an urn out and put it in another plot, they would have to pay for a whole new plot.

The People argued that with a full record, this court's opinion would have been different; that it was clear C.W.'s mother was not given any option but to purchase the approximately $19,000 plot, and there was no windfall. Defense counsel argued C.W.'s family "is gaining $8,000 because her brother's estate is not paying for a burial plot for her brother" and that the "most logical thing that should happen . . . is that her brother's estate should

---

[2]  The general manager was asked: "So, is it safe to say that the price—I know the gross price was approximately $16,000, but after all the taxes and fees on top of that, it's $19,487.12. That end price, was that affected in any way by [C.W.'s mother] having her brother buried in the same plot?" He answered: "No. If you look on this invoice, it says 'merchandise and service,' to the left where 'quantity,' it says '1111.' So, it was just referring to one internment. [¶] So, the space itself costs $16,500, whether you have one or two, and it shows two here, but the rest of the page shows just for one internment [sic]." He testified he had to show a unit price for each interment, but assuming C.W.'s mother purchased the plot and only decided to lay C.W.'s remains in it, the invoice would not change. According to him, the least expensive plot in the memorial cost approximately $10,000.

5

pay for half of the burial plot of the $16,050 plus the taxes, which comes out to $16,577.12. That's the total. It should be divided in half and the brother's estate should pay for that half because they are gaining a benefit. They are getting a free place to bury her brother. [¶] The windfall is that if they were to bury him somewhere else, the estate would have to pay for somewhere else."

The trial court ordered C.K. to pay restitution in the amount of the full cost of the burial plot—$19,487.12—stating: "The Court of Appeal will now have the benefit of the testimony of [C.W.'s mother] as well as the [general manager] of the memorial park. [¶] It is absolutely clear that there is no discount if more than one person is interned [sic] in the grave. [C.W.'s mother] selected this plot for the reasons that she detailed. She wanted it in a specific section of the cemetery. She wanted it under a tree and she wanted it so that it would have enough space for the family to mourn. [¶] As the [general manager] stated, the amount of the plot is not affected, at all, by the uncle's internment [sic]. [¶] I don't believe that the Court of Appeal, which directed me to conduct further proceedings, consistent with the opinion, would want me to turn a blind eye to the facts. [¶] In this case, both the facts and the law support a finding of $19,487.12 in restitution." C.K.'s counsel represented to the court that the restitution had already been paid.

C.K. again appeals.

DISCUSSION

C.K.'s sole contention is that the juvenile court violated this court's remittitur by disregarding our instructions to reapportion the burial plot expense. He argues our "opinion unambiguously instructs the trial court to reapportion the amount [he] owes considering an offset for the uncle's portion of the interment plot." According to C.K., "[t]he juvenile court . . . effectively

6

overruled this Court's opinion by giving the prosecution a second chance to argue for the court to reimpose its original restitution order," which not only violated the remittitur, but repeated evidence and argument this court had already considered. He asks us to reverse the restitution order and remand with instructions that the trial court calculate half of the interment plot expenses and decrease the previous order by that amount.

## I. *Legal Principles*

After a remittitur issues, " 'the trial court is revested with jurisdiction of the case, *but only to carry out the judgment as ordered by the appellate court.*' " (*People v. Hargis* (2019) 33 Cal.App.5th 199, 204, quoting *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366.) "In general, when a judgment is reversed and remanded with directions, ' "those directions are binding on the trial court and *must* be followed." ' [Citations.] The order of the appellate court, as stated in the remittitur, defines the scope of the trial court's jurisdiction to act, and action which does not conform to the reviewing court's directions is unauthorized and void." (*In re J.M.* (2024) 103 Cal.App.5th 745, 755, review granted Sept. 25, 2024, S286259, quoting *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 860 and citing *Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 701; see also *Dutra,* at p. 1367.) "On remand, the trial court must adhere to the reviewing court's directions even if the lower court is convinced the appellate court's decision is wrong . . . ." (*Ayyad,* at p. 860.)

"If a remittitur is *ambiguous* the trial court can interpret it in light of the law and the appellate opinion to determine its duties." (*People v. Dutra, supra,* 145 Cal.App.4th at p. 1368.) When the reviewing court remands the matter for further proceedings, the trial court must read its directions along

with the entire opinion. (*Ayyad v. Sprint Spectrum, L.P., supra,* 210 Cal.App.4th at p. 859.)

"We review de novo a claim that the trial court did not follow the directions contained in the dispositional language of our previous opinion. [Citation.] We look to the wording of our directions, read in conjunction with the opinion as a whole." (*Ruegg & Ellsworth v. City of Berkeley* (2023) 89 Cal.App.5th 258, 264; see also *Ayyad v. Sprint Spectrum, L.P., supra,* 210 Cal.App.4th at p. 859.)

## II. *The Court Exceeded the Scope of Our Remittitur*

We look at not just our disposition, but also the entirety of our opinion (*Ayyad v. Sprint Spectrum, L.P., supra,* 210 Cal.App.4th at p. 859; *Ruegg & Ellsworth v. City of Berkeley, supra,* 89 Cal.App.5th at p. 264) to assess whether the trial court correctly interpreted our directions. As stated, the court following remand granted the People's request for a new evidentiary hearing and thereafter ordered C.K. to again pay restitution for the full amount of the plot. The court's conduct of those proceedings was not necessarily outside the scope of our remittitur, which permitted the court to recalculate C.K.'s share of the plot costs in "further proceedings. . . ." However, its ultimate decision was a material departure from the remand order, which did not leave open the option of reconsidering our prior opinion that "ordering C.K. to pay the entire cost of the burial plot in which C.W.'s uncle was also buried . . . gives C.W.'s family a windfall." (*In re C.K., supra,* D080341.) We previously agreed that "the court should have ordered an offset in the costs related to the burial plot." (*Ibid.*)

We agree the trial court in effect overruled this court's decision: it essentially found C.W.'s family did not obtain a windfall because the plot was the same price regardless of C.W.'s uncle's interment there. But our remand

8

" 'did not leave open the option of reconsidering prior rulings . . . .' " (*Ruegg & Ellsworth v. City of Berkeley, supra,* 89 Cal.App.5th at p. 266, quoting *Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982.) We had already concluded C.W. would obtain a windfall if C.K. were required to pay as restitution the cost of the entire plot; that decision was not open for reexamination, only a recalculation so as to "narrowly tailor the amount of the costs C.K. should pay." (*In re C.K., supra,* D080341.)

The parties' evidence considered by the trial court does not warrant a different outcome. The unambiguous provisions of the interment contract, which we interpret as a matter of law (*Another Planet Entertainment, LLC v. Vigilant Ins. Co.* (2024) 15 Cal.5th 1106, 1135 [insurance policy]; *Oakland-Alameda County Coliseum Authority v. Golden State Warriors, LLC* (2020) 53 Cal.App.5th 807, 819 [license agreement]), confirm that what C.W.'s mother purchased were "2 Interment Rights," permitting her to elect to place a second urn in the spot. The general manager confirmed the contract conveyed those rights; that a family selecting a plot for one burial "can come in and do a second internment [*sic*] later on." To the extent the general manager's testimony was extrinsic evidence, it did not contradict the contract.

While statutory provisions implementing restitution are "broadly and liberally construed" (*Luis M. v. Superior Court* (2014) 59 Cal.4th 300, 305), restitution must reimburse the victim for losses incurred "as a result of the minor's conduct" (§ 730.6, subd. (h)), and has to have "some factual nexus to the damage caused by the minor's conduct." (*Luis M.,* at p. 309.) As we previously held, C.W.'s family obtains a windfall if C.K. were to pay the value of the right for C.W.'s uncle's (or any other individual's) interment. The restitution award should have been tailored to order C.K. to pay the value of

9

only C.W.'s interment, one half of the $19,487.12 cost for the two interment rights, or $9,743.56.

Because the court's ruling otherwise materially varied from our remittitur, it is void. Accordingly, we reverse and remand with directions that the court vacate its order that C.K. pay $19,487.12 and issue a new order for C.K. to pay $9,743.56 as restitution for C.W.'s interment.

## DISPOSITION

The order is reversed. On remand, the trial court is directed to vacate its November 29, 2023 order that C.K. pay $19,487.12 and issue a new order that C.K. pay $9,743.56 in restitution for C.W.'s interment.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.