Filed 5/21/25  P. v. Gentile CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082817 |
| v. | (Super.Ct.No. INF1401840) |
| JOSEPH ROBERT GENTILE, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Bernard Schwartz, Judge.  Affirmed.

Johanna Pirko, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

Following defendant Joseph Robert Gentile, Jr.'s, conviction for the beating murder of Guillermo Saavedra (the victim), defendant appealed, we reversed for error in the instructions, and then a series of appeals and decisions flowed from passage of Senate Bill No. 1437, the enactment of Penal Code[1] section 1170.95, and the amendments that have followed. (§ 1172.6.) Ultimately, defendant filed a section 1172.6 petition in the superior court, there was an evidentiary hearing at which the star prosecution witness, defendant's ex-wife, Saundra Roberts testified, as well as the defendant, but relief was denied. Following another appeal, the matter was remanded to allow the superior court to clarify its findings, which was done, and defendant again appeals.

In this appeal, defendant argues the trial court failed to carry out our directions on remand by failing to determine whether defendant was the killer or an aider and abettor beyond a reasonable doubt. We affirm.

## BACKGROUND

In June 2014, the victim, was found beaten to death inside a Mexican restaurant in Indio, California, where the victim lived and worked as the caretaker. (*People v. Gentile* (June 29, 2023, E079265) [nonpub. opn.] (*Gentile VI*). Near the victim's body was a broken chair, a broken beer bottle, a wooden stick, and a broken golf club with the victim's blood on it, as well as bloody shoe and sock prints. (*Ibid.*) Also found in the restaurant were cigarette butts containing DNA from defendant, Roberts, and the victim. (*Ibid.*) Evidence introduced at trial was conflicting, as will be elucidated below.

---

[1] All statutory references are to the Penal Code.

In 2015, defendant was convicted of first degree murder in connection with the beating death of the victim. The prosecution's star witness was defendant's ex-wife, Roberts, who testified following a grant of immunity. (*Gentile VI*, *supra*, E079265.) The facts of the murder are discussed in the context of the evidence adduced at the evidentiary hearing, set out below. Defendant was convicted of first degree murder and sentenced to prison for 25 years to life.

On direct appeal, we reversed the conviction for instructional error pursuant to the Supreme Court decision in *People v. Chiu* (2014) 59 Cal.4th 155, because the jury was instructed it could convict defendant under a natural and probable consequences theory and we remanded the matter for the People to decide whether to accept a reduction to second degree murder, or to retry defendant for first degree murder under theories other than natural and probable consequences. (*People v. Gentile* (Feb. 27, 2017, E064822) [nonpub. opn.] (*Gentile I*).) We did not reach defendant's other claims.

On remand, the People accepted the reduction to second degree murder and defendant was resentenced to an indeterminate term of 15 years to life. Defendant appealed again, raising the issues we had left undecided in the first appeal. While that appeal was pending, Senate Bill No. 1437 was signed into law, which, effective January 1, 2019, amended the Penal Code to modify accomplice liability for murder and the felony-murder rule. (Stats. 2018, ch. 1015.) By our leave, defendant filed a supplemental brief arguing that Senate Bill No. 1437 applied retroactively to his conviction and that it eliminated second degree murder liability under a natural and probable consequences theory. We affirmed his second degree murder conviction but

modified the sentence by reducing court facilities assessments. (*People v. Gentile* (Nov. 15, 2018, E069088) [nonpub. opn.] (*Gentile II*).)

The Supreme Court granted defendant's petition for review and transferred the case to this court to reconsider defendant's second degree murder conviction in light of the recently enacted Senate Bill No. 1437. (*People v. Gentile*, S253197, Supreme Ct. Mins., Mar. 13, 2019.) On reconsideration, we again affirmed defendant's second degree murder conviction. (*People v. Gentile* (May 30, 2019, E069088), review granted and opn. ordered nonpub. Sept. 11, 2019, S256698 (*Gentile III*).)

The Supreme Court again granted review, reversing our decision on December 17, 2020 (*People v. Gentile* (2020) 10 Cal.5th 830, 860 (*Gentile IV*)), and holding that Senate Bill No. 1437 bars a conviction for second degree murder under the natural and probable consequences theory. It also held that the procedure set forth in section 1170.95 is the exclusive mechanism for retroactive relief, and thus the ameliorative provisions of Senate Bill No. 1437 did not apply to nonfinal judgments on direct appeal. (*Gentile IV, supra*, 10 Cal.5th at p. 839.) Pursuant to the Supreme Court's directions, we vacated our decision, and, after additional briefing by the parties, we affirmed the second degree murder conviction without prejudice to any petition for relief defendant may file pursuant to section 1170.95. (*People v. Gentile* (Mar. 1, 2021, E069088) [nonpub. opn.] (*Gentile V*).)

On January 21, 2021, defendant filed a petition pursuant to section 1172.6, alleging he was convicted under the natural and probable consequences theory, and was granted an evidentiary hearing. At the evidentiary hearing both defendant and Roberts

4

testified. At the conclusion of the hearing, the trial court made the following factual findings, which we summarized in *Gentile VI*, *supra*, E079265:

"The court found as follows: Defendant met up with Ms. Roberts and met for the first time the victim in the case, Mr. Saavedra, who lived and worked at the restaurant as a security guard and caretaker. At that time, Roberts was either somewhat homeless, may have been living with a boyfriend or was in between boyfriends, and was planning to stay at the restaurant with the victim, who she had occasionally stayed with before when she was not at one of the homeless shelters.

"The court determined that defendant did go to the restaurant, evidenced first by his statements to law enforcement, admitting he was there; second, his testimony in the order to show cause hearing that he was there; third, his DNA was on a cigarette that is found inside of the restaurant in an ashtray; and fourth, Roberts' testimony that defendant was there.

"At some point during their meeting, after defendant sent Roberts go buy some beer, there was a dispute or an argument that occurred between the defendant and the victim, and because of that argument, there was some physical altercation that occurred.

"The court went on to acknowledge there was a dispute as to what happened, and proceeded to summarize its findings: Defendant told law enforcement in an interview that the argument was as a result of Roberts having told defendant that the victim had raped her, as a result of which, defendant struck the victim two to three times with his fists, causing the victim to fall to the ground, inside of the restaurant.

"The court went on to explain that Roberts testified at the OSC hearing, as she had testified at trial and in her pretrial statements to police, that she left the residence before any blow was struck by defendant. The statement to law enforcement was consistent with the physical evidence to the extent there were no traces of Roberts either at or after the time that the victim was killed.

"The court also acknowledged that while there is no DNA or fingerprint evidence on any of the items that were either broken or found at the scene that might have been used to beat the victim, the evidence of the sock, bearing DNA of the victim and the profile of the defendant in the blood was found to be the most striking to the court. If the defendant had not been present at the time the physical beating occurred, then the victim would have been alive, so it would be unlikely that a sock could have had both his DNA profile and that of the victim's, because there would be no blood to step in if defendant was not there.

"Another important piece of evidence to the court was the photograph admitted during defendant's trial depicting Budweiser beer cans found in a trash can inside the restaurant, whereas defendant testified the consumption of the beer occurred outside. This physical evidence was inconsistent with defendant's testimony.

"Other significant evidence related to Roberts' testimony (both at the OSC hearing and in the first trial) that she made cocktails for defendant and the victim, which was corroborated by the photograph of the physical evidence, showing the ashtray with the cigarette butt and the alcoholic drinks on the table inside the restaurant.

6

"The court noted that video evidence from a laundromat that was next to the Royal Plaza Inn showed the defendant was there. Gardner, contacted by Roberts on defendant's behalf, brought clothing, including a shirt, shorts, socks to that area, so defendant was able to make a change in clothing. The court concluded from the physical evidence that defendant was inside the restaurant and present when the murder occurred.

"The court also pointed to the consistent evidence that defendant's hands were red and swollen, that he was described as wet (by both Roberts and Gardner), and that he made admissions to Roberts that he had gotten into a really bad fight and may have killed the victim, as well as other statements by defendant that he engaged in fisticuffs with the victim, who did not fight back, and how, when defendant struck the victim, the latter fell to the ground.

"The court found defendant was either the direct perpetrator or an aider and abettor based on his statements to police. The court also observed that based on the instructions to the jury, in order to convict the defendant of first degree murder, the jury had to find premeditation and deliberation by defendant.[2]

---

[2] "There were no instructions on felony murder as a basis for finding first degree murder in the original trial. The only theory offered to support first degree murder was murder which was premeditated and deliberate. However, the jury had been instructed on the two types of malice aforethought and that it could find defendant acted with implied malice if it found he had committed an aggravated assault on the victim, during the course of which a coparticipant committed murder, as a natural and probable consequence of which the victim died. In this respect, the jury had been instructed that if defendant had committed an act, the natural and probable consequences of which the death occurred, defendant was guilty of second degree murder."

"It further determined the defendant was not convicted of murder under the felony-murder doctrine due to the lack of instructions on that theory, and the fact that the only instruction that referred to the natural and probable consequences doctrine was CALCRIM No. 520, where the instruction explained implied malice.[3]

"As for the fact the jury rejected a finding that defendant personally used a deadly weapon, the court found that was not determinative because defendant struck the first blows which incapacitated the victim, who died of a heart attack following defendant's assault.  The court therefore concluded defendant could still be convicted of murder beyond a reasonable doubt and that it was either a first-degree intentional murder, second-degree implied malice murder, or a second-degree implied malice murder as a direct aider and abettor.

"Based on the findings made by the court as an independent fact finder, the court denied defendant's petition for resentencing.  Defendant appealed." (*Gentile VI*, *supra*, E079265.)

Defendant appealed, and, in *Gentile VI*, we determined there was substantial evidence to support the trial court's independent factual findings that defendant was either the actual killer or a direct aider and abettor of the killing by Roberts, and that defendant's conviction of first degree murder was based on the jury's determination he killed the victim with premeditation and deliberation.  (*Gentile VI*, *supra*, E079265.)

_____

[3]    "This instruction was given with respect to the lesser offense of second degree murder; no felony murder or natural and probable consequences theory was proposed in support of first degree murder in the instructions."

However, we also concluded the trial court used problematic language in saying, "'rul[ing] as an independent fact-finder, Mr. Gentile *could still be convicted* of murder beyond a reasonable doubt and that it was either a first-degree, intentional murder, second-degree implied malice murder, or a second-degree implied malice murder as a direct aider and abettor." (Italics added.) The statement 'that it was either first-degree, intentional murder, second-degree implied malice murder, or a second degree implied malice murder as a direct aider and abettor,' satisfies us that the court properly discharged its duty to make independent factual findings." (*Gentile VI*, *supra*, E079265.)

We therefore remanded the matter to the superior court to clarify its findings. On October 20, 2023, the trial court conducted a hearing pursuant to the remittitur in *Gentile VI*, *supra*, E079265 to clarify its findings, pursuant to our directions. The trial court reiterated its findings that defendant was guilty of murder by proof beyond a reasonable doubt, that defendant was either the actual killer or a direct aider and abettor acting with intent to kill. The court also reaffirmed its previous finding that defendant was not convicted under a felony-murder theory. It then found beyond a reasonable doubt that the People had met their burden of proof that the defendant is still guilty of murder under California law, as amended by the changes enacted, in sections 188 and 189 that became effective as of January 1, 2019.

On December 18, 2023, defendant timely appealed.

### DISCUSSION

The sole issue presented in this appeal is Defendant's assertion that the trial court did not follow our directions on remand. Defendant argues that our disposition in *Gentile*

9

*VI*, *supra*, E079265, required the trial court to specify the particular theory on which defendant had been proven guilty by the People following the evidentiary hearing on his section 1172.6 petition, in addition to clarifying its previously problematic statement that defendant *could still be convicted* of murder under current law. We disagree.

After the remittitur, the trial court is revested with jurisdiction of the case, but only to carry out the judgment as ordered by the appellate court. (*People v. Wilson* (2024) 16 Cal.5th 874, 949, citing *People v. Picklesimer* (2010) 48 Cal.4th 330, 337; see *People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366 (*Dutra*).)

"Whether the trial court correctly interpreted our prior opinion is an issue of law reviewed de novo." (*Martinez v. Rite Aid Corp.* (2021) 63 Cal.App.5th 958, 968, citing *Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859; *In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 674 ["The interpretation of the language of a judicial opinion is a legal determination, and it is therefore subject to de novo review"].) "If a remittitur is *ambiguous* the trial court can interpret it in light of the law and the appellate opinion to determine its duties." (*Dutra*, *supra*, 145 Cal.App.4th at p. 1368, citing *Combs v. Haddock* (1962) 209 Cal. App. 2d 627, 631.)

In *Gentile VI*, we rejected defendant's argument that it was error for the trial court to find beyond a reasonable doubt that defendant was either the actual killer or a direct aider and abettor, and we specifically held that there was substantial evidence to support the trial court's determinations. (*Gentile VI*, *supra*, E079265.) While it would make our job easier if the trial court had picked one particular theory of guilt over the other, having found substantial evidence to support both theories in that appeal, any failure to do so is

10

harmless where the trial court found the People met their burden on both. Instead, we were most concerned about the trial court's previous findings that defendant *could still be convicted* under either theory, rather than employing the language of the statute requiring the trial court to find that the People had carried their burden of proving defendant's guilt of murder beyond a reasonable doubt.

Prior to the amendment to section 1170.95, that went into effect January 1, 2022, there was a split of authority as to whether, at the section 1170.95, subdivision (d) hearing, the trial court acts as an independent fact finder, or applies the substantial evidence test, but the amendment resolved that split by requiring the trial court, acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 745.) Under the amended statute, the judge reviews the record, hears the testimony, and decides as a factual matter whether the petitioner committed murder under the current law. (*People v. Clements* (2022) 75 Cal.App.5th 276, 297.)

In our opinion, the trial court clarified its previous findings by ruling that the People carried their burden of proving defendant was guilty of murder under current law beyond a reasonable doubt. It also concluded defendant was *not* convicted under a felony-murder theory. Having previously determined there is substantial evidence to support the trial court's findings at the evidentiary hearing that defendant is guilty under either theory, our determination that the trial court's finding beyond a reasonable doubt that the People proved that defendant was guilty of murder under current law under both theories was a proper discharge of its obligation under our remand directions.

11

In reaching this conclusion, we observe that similar contentions that a jury should have been required to unanimously agree on which of the prosecution's theories had been proved beyond a reasonable doubt have been rejected by the Supreme Court in the past. (*People v. Potts* (2019) 6 Cal.5th 1012, 1048; see *People v. Scully* (2021) 11 Cal.5th 542, 598.) We further observe that the primary inquiry in any resentencing proceeding pursuant to section 1172.6 is to determine if the conviction for murder meets the elements required under current law, not whether the finding of guilt was grounded on alternative bases.

It is important to recall that in making its independent factual findings, the trial court found that defendant's initial blows incapacitated the victim, who died of a heart attack following the brutal assault. (*Gentile VI*, *supra*, E079265.) The court concluded defendant was convicted of murder beyond a reasonable doubt and that it was either a first degree intentional murder, second degree implied malice murder, or a second degree implied malice murder as a direct aider and abettor (for facilitating additional beating by Roberts, according to the defense theory).

The defense theory was that defendant struck the man three or four times in the face, using his hands, at which point Roberts began hitting the victim with a club or what appeared to the defendant to be a sledgehammer. During summation in the original trial, the People argued that if the jury accepted defendant's statement, it would still have to conclude that defendant initiated the violence, and that he aided and abetted Roberts who beat the victim with the club. (*Gentile I*, *supra*, E064822.)

12

Whether defendant personally administered additional blows to the victim, or whether the victim's incapacitation after defendant's initial blows facilitated Roberts' blows with a club or other instrument also led to the victim's death does not alter the defendant's guilt. Irrespective of the theory chosen by the jury, or the specific basis for the trial court's factual findings in the resentencing proceedings, the victim was incapacitated by defendant's blows and the victim died of a heart attack. Thus, even if Roberts participated in the beating that was initiated by defendant, the defendant was an active aider and abettor for facilitating Roberts' participation.

In a perfect world, concrete findings on a particular theory simplify our task, but that is impossible on this record, with conflicting versions of the acts leading up to the victim's death, and circumstantial evidence supporting defendant's guilt under two different theories. Greater clarity is not possible, but under both scenarios presented to the original jury, defendant was guilty of murder by proof beyond a reasonable doubt because he either caused the death directly by his blows, or his blows incapacitated the victim such that Roberts was able to finish the job. The jury was only instructed on the natural and probable consequences doctrine with respect to second degree murder as a lesser offense, and the jury rejected that theory in returning a verdict of guilt on first degree murder.

At the evidentiary hearing, the trial court had reviewed a large part of the trial transcripts and heard the live testimony of both Roberts and defendant before making its independent findings that either defendant was the actual killer, or he was a direct aider

and abettor of the murder. We concluded those findings were supported by substantial evidence. (*Gentile VI*, *supra*, E079265.)

On remand, the court reiterated those findings, and then clarified its findings to state that it found "beyond a reasonable doubt that the People have met their burden of proof that the [defendant] is still guilty of murder under California law, as amended by the changes enacted, [section[s] 188 and 189] that was effective as of January 1, 2019." The trial court followed our instructions on remand.

Whatever else may be implied from our previous disposition, the trial court's explicit finding that the felony-murder theory was inapplicable to the facts of the case, and that defendant was either the actual killer or a direct aider and abettor, satisfies us that the trial court properly found beyond a reasonable doubt that defendant's conviction of second degree murder was valid under current law. Defendant was properly deemed ineligible for vacatur of his conviction for second degree murder and resentencing.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ        
             P. J.


We concur:

McKINSTER      
          J.
CODRINGTON    
          J.