Filed 1/10/25  P. v. Deiner CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082014 |
| v. | (Super.Ct.No. FWV1400027) |
| JASON DEINER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Daniel W. Detienne, Judge.  Conditionally reversed with directions.

So'Hum Law Center of Richard Jay Moller and Richard Jay Moller for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley and Michael J. Patty, Deputy Attorneys General, for Plaintiff and Respondent.

1

A jury convicted Jason Deiner of five counts of robbery, two counts of burglary, and one count of reckless evasion of a police officer. (Pen. Code, §§ 211, 459; Veh. Code, § 2800.2; unlabeled statutory citations refer to the Penal Code.) In 2019, we decided Deiner's appeal from the judgment. (*People v. Deiner* (Dec. 19, 2019, E071193) [nonpub. opn.] (*Deiner I*).)[1] We conditionally reversed the judgment and remanded the matter for the trial court to consider whether Deiner qualified for mental health diversion under section 1001.36. We also directed the court to consider whether to strike Deiner's enhancements for prior serious felony convictions, assuming that the court declined to order mental health diversion.

On remand, the court denied Deiner's diversion motion. The court resentenced him by striking four prior serious felony enhancements, reducing his prison sentence by 20 years. In this appeal from the amended judgment, Deiner argues that the court abused its discretion by applying the incorrect legal standard to his diversion motion. He also argues that the court abused its discretion by declining to consider a full resentencing on remand. We agree that the court applied the incorrect legal standard when it ruled on the diversion motion. We therefore conditionally reverse the judgment and remand for the court to reconsider the diversion motion under the correct standard. But we otherwise reject Deiner's arguments.

---

[1]    We granted Deiner's request to take judicial notice of our opinion in his first appeal.

2

BACKGROUND

I.      *Deiner's convictions and original sentence*

The evidence at trial showed that Deiner robbed two banks, one in December 2013 and another in January 2014. (*Deiner I*, *supra*, E071193, pp. 2-3.) He wielded a gun during both robberies, and he also claimed to have a bomb during one robbery. (*Ibid.*) Deiner led officers on a car chase after the second robbery, but they eventually apprehended him. (*Id.* at p. 3.) Inside his truck, investigators found clothing that matched descriptions of the robber's clothing, $1100, and a BB gun. (*Ibid.*)

The jury convicted Deiner of robbing two employees at the first bank and three employees at the second bank. (*Deiner I*, *supra*, E071193, p. 9.) The jurors also convicted him of second degree burglary of both banks and recklessly evading officers for the car chase. (*Ibid.*) The operative information alleged that Deiner had five prior robbery convictions (three in one case and two in another case), which qualified as prior strikes for purposes of the three strikes law and prior serious felonies under section 667, subdivision (a)(1). (*Id.* at p. 8.) The court found those allegations to be true, and it denied Deiner's motion to strike or dismiss the prior strikes under section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*). (*Deiner I*, *supra*, E071193, p. 8.)

The court sentenced Deiner to a total of 70 years to life in prison, plus a determinate term of six years. (*Deiner I*, *supra*, E071193, p. 2.) The indeterminate sentence consisted of two 25-years-to-life terms for two of the robbery counts and four

3

five-year terms for prior serious felony enhancements.  (*Id.* at p. 9.)  The six-year term was for recklessly evading officers.  (*Ibid.*)  The court imposed prison terms on the remaining counts, but it stayed them under section 654 or ordered them to run concurrently.  (*Ibid.*)

II.     *Mental health diversion proceedings on remand*

In *Deiner I*, Deiner argued that the recently enacted mental health diversion statute applied retroactively in his case because the judgment was nonfinal.  We agreed, conditionally reversed the judgment, and directed the trial court to consider whether Deiner qualified for mental health diversion under section 1001.36.  Our Supreme Court granted review and deferred further action pending review and disposition of the issue in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*).  (*People v. Deiner* (Feb. 26, 2020), S260282.)  *Frahs* held that section 1001.36 applied retroactively to all cases not yet final on appeal (*Frahs*, at pp. 624, 630-631), and the Supreme Court dismissed review in *Deiner I*.  (*People v. Deiner* (July 29, 2020), S260282.)

A.     *Relevant evidence*

After the case was remanded to the trial court, Deiner submitted a written report from a licensed psychologist, Dr. Chuck Leeb.  Dr. Leeb evaluated Deiner in May 2021 and found him to be an appropriate candidate for mental health diversion.  The doctor diagnosed Deiner with posttraumatic stress disorder (PTSD), amphetamine-type substance use disorder, and opioid use disorder.

4

According to Dr. Leeb's report, Deiner began using methamphetamine at age 12 and heroin at age 30. (Deiner was 42 years old when evaluated.) In Dr. Leeb's experience, there was "a high correlation" between methamphetamine use at an early age and sexual assault. The doctor asked Deiner "if this applied to him." Deiner slumped his shoulders, looked away, and turned to the side. He then reported that when he was eight or nine years old, his older brother's friend "was around a lot." The friend was approximately 15 years older than Deiner. The friend threatened to hurt Deiner and his family if Deiner said anything. Dr. Leeb concluded that Deiner had been sexually assaulted. He opined that the sexual assault caused PTSD and that Deiner dealt with the trauma by using methamphetamine and heroin.

The doctor further opined that there was "a very high probability that Mr. Deiner's mental health symptoms were the only reason" that Deiner committed the offenses. Someone with PTSD may suffer from auditory pseudo-hallucinations and paranoid ideation. Deiner reported that he had been delusional and had auditory hallucinations when he was using drugs, and he had paranoid auditory hallucinations even when he was sober. The hallucinations had stopped since he started taking antipsychotic and antianxiety medications. Deiner said that he committed the offenses because he needed money to hire an attorney in his child custody dispute. Dr. Leeb opined that PTSD impacted Deiner's reasonableness, insight, foresight, judgment, and ability to control himself. He also opined that the symptoms motivating Deiner's criminal behavior would respond to mental health treatment.

The court held several hearings on Deiner's diversion motion. Dr. Leeb testified at the first hearing in April 2022. Consistent with his report, the doctor testified that he diagnosed Deiner with PTSD resulting from childhood sexual assault. When Deiner said that he had started using methamphetamine at 12 years old, Dr. Leeb asked him if he had been sexually assaulted as a child. Deiner "broke down and admitted reluctantly that he had been." He appeared to be in emotional pain; he dropped his head, slumped his shoulders, put his hands on his head, and teared up. Deiner said that he had been assaulted over a period of time and that the perpetrator threatened his safety and the safety of his family. At that age, Deiner believed that he and his family were in danger, so he did not disclose the assault. Dr. Leeb asked Deiner for more details but did not push when Deiner said that he did not "'want to go there now.'"

According to Dr. Leeb, victims of childhood sexual assault can experience scarring and lesions particularly in the right hemisphere of the brain, which is the area of the brain that affects executive functions, the ability to regulate emotions, and self-image and self-esteem. It was not unusual for victims of childhood sexual assault to engage in criminal behavior because of the effect on the executive functioning of the brain. For example, Deiner said that he committed the robberies to get money for his children. Committing robberies for that purpose "doesn't make any sense, but it does make sense if you can't engage the executive functions." Dr. Leeb saw no evidence that Deiner had a toxicology screen when he was arrested, but if he had methamphetamine in his system,

6

that would have also driven his behavior. Methamphetamine was "not known for producing logical, reasonable thought."

Dr. Leeb opined that Deiner would not have committed the offenses if he had not been suffering from PTSD caused by childhood sexual assault. Deiner took full responsibility for his behavior, felt remorse for his actions, and was empathetic toward his victims. His records also showed that he had been a model prisoner; he had not violated any rules, and he was medication compliant. The doctor did not see any indications that Deiner was malingering.

Deiner also submitted his medical records from prison, and the court indicated that it reviewed them. According to the medical records, Deiner had a mental health consultation in July 2020. In the section describing the reason for the consultation, the notes state: "Inmate has issues of drug usage and old childhood traumas that he reports he can barely recall." The records indicate that he had a mental health assessment later that month. The clinical summary states that Deiner was "endorsing both anxiety and some depression. He reports having been depressed most of his life. . . . The patient reported having been sexually molested by a neighbor boy when he []was in grade school. . . . The patient has a drug history that began about age 12 shortly after a Sunday School teacher was being too overfamiliar with him and he stopped going to that church." The records of the same assessment also state: "Overall, this patient had difficulties in school in reaction to his sexual molest and managed to graduate continuation School. He reacted again to the later overfamiliarity by using drugs to numb up. The patient most

7

likely lost his trust in people following the overfamiliarity and drug abuse led to criminality and finally to prison."

B.    *The court's ruling*

The court heard argument on the diversion motion at a second hearing in May 2022. Deiner argued that he had shown his eligibility for mental health diversion, because Dr. Leeb had diagnosed him with qualifying mental disorders and those disorders played a significant role in the commission of the offenses. The court did not rule on that date and continued the matter.

At the continued hearing in March 2023, the court announced its tentative ruling to deny the diversion motion. The court observed that Deiner had a long history of substance abuse and characterized that evidence as "completely credible." But the court stated: "There were some other things that were not as clearly proven. There was a sexual abuse as a child claim that was made that has credibility issues. I note [defense counsel] didn't even mention that in her original sentencing brief, so this is something that came out later in talking to Dr. Leeb; and the evidence of that in the record is unclear." The court also observed that Deiner "probably wouldn't commit another crime. His dangerousness to the community may or may not be there, and he may or may not have some mental illness; but the Court finds no nexus, no evidence, not even near a preponderance of the evidence, just no evidence that this—these two bank robberies were related to a mental illness." The court noted that in committing the offenses, Deiner used clothing to disguise himself, used a gun (that the victims did not know was fake), led

8

police on a car chase, and told police that he committed the robberies because he needed money for child support. The court also noted that there was no evidence that Deiner was under the influence when he committed the offenses. The court reasoned: "So while I think he may have had a drug addiction at the time, probably did, there's zero evidence in the record that any of that, that he had a mental illness other than drug abuse that contributed to the crime; and that even if he was a drug addict, there's no evidence linking the addiction to the crime. [¶] And, therefore, because there's no evidence of a nexus, my tentative would be to deny consideration for M.D.D."

In response to the tentative ruling, Deiner argued that Dr. Leeb testified that Deiner had PTSD, which could lead to drug abuse as a way to deal with untreated mental health issues. Deiner asserted that there was a nexus between his untreated PTSD and the offenses. The court replied: "And it's that P.T.S.D. that I just find no supporting evidence of in the—in the record for that." The court adopted its tentative ruling and denied Deiner's motion for diversion.

III. *Deiner's resentencing*

After Deiner's original sentencing, the Legislature amended section 1385, subdivision (b), to give courts discretion to strike or dismiss prior serious felony enhancements. (Stats. 2018, ch. 1013, § 2, eff. Jan. 1, 2019.) In *Deiner I*, we directed the

9

court to consider whether to strike or dismiss those enhancements if it did not grant Deiner's diversion motion.[2] (*Deiner I*, *supra*, E071193, pp. 14-15.)

The court resentenced Deiner in August 2023. Deiner's resentencing brief argued that he was entitled to "a full resentencing" on the prior serious felony enhancements and also his prior strikes. Deiner urged the court to strike both the prior strikes and the prior serious felony enhancements. He also urged the People to recommend that the court recall his sentence and resentence him under section 1172.1. (Former § 1172.1, subd. (a)(1), enacted by Stats. 2022, ch. 58, § 9 [court may recall the sentence and resentence a defendant "at any time upon the recommendation" of the district attorney].)

The People argued that the court had no jurisdiction to reconsider its denial of Deiner's *Romero* motion to strike the prior strikes; Deiner did not raise that issue in *Deiner I*, and the remittitur did not mention the issue. The People also declined to recommend that the court recall Deiner's sentence under section 1172.1.

The court struck all four of the prior serious felony enhancements, giving Deiner a total sentence of 50 years to life in prison plus a determinate sentence of six years. But the court determined that the remittitur did not give it authority to conduct a full resentencing, and it had no authority to conduct a full resentencing under section 1172.1. The court noted that even if it had jurisdiction to strike the prior strikes, it would again decline to do so.

---

[2] Specifically, our disposition stated: "If the court reinstates [Deiner's] convictions, the court shall resentence Deiner and consider whether to strike or dismiss the prior serious felony enhancements under section 667, subdivision (a)(1), and section 1385, subdivision (b)." (*Deiner I*, *supra*, E071193, p. 15.)

DISCUSSION

I.      *Mental health diversion*

Deiner argues that the trial court abused its discretion by applying the incorrect legal standard to his motion for diversion.  He asserts that the Legislature had recently amended section 1001.36, but the court applied the former version of the statute.  We agree and remand for the court to reconsider the motion under the correct legal standard.

A.      *Overview of the diversion statute*

Since 2018, section 1001.36 has given trial courts discretion to grant pretrial diversion to defendants suffering from qualifying mental disorders.  (*People v. Brown* (2024) 101 Cal.App.5th 113, 119 (*Brown*).)  In April and May 2022 (when the first two hearings in this matter occurred), the former version of the statute listed six criteria for determining whether to grant diversion.  (Former § 1001.36, subd. (b)(1)(A)-(F), as amended by Stats. 2019, ch. 497, § 203.)  The first two criteria required the court to be "satisfied" (1) that "the defendant suffers from a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders" (DSM) and (2) that "the defendant's mental disorder was a significant factor in the commission of the charged offense."  (Former § 1001.36, subd. (b)(1)(A)-(B).)  The defendant had to show that those criteria were satisfied by a preponderance of the evidence.  (See Evid. Code, § 115 ["Except as otherwise provided by law, the burden of proof requires proof by a preponderance of the evidence"].)

11

Effective January 1, 2023, the Legislature amended section 1001.36. (Stats. 2022, ch. 735, § 1.) The Legislature recharacterized the first two criteria as "'eligibility'" criteria. (*Sarmiento v. Superior Court* (2024) 98 Cal.App.5th 882, 891 (*Sarmiento*).) "More substantively, a defendant's eligibility no longer turned on findings to the court's 'satisfaction.' Rather, defendants are generally eligible if they 'ha[ve] been diagnosed' with a recognized mental disorder" (*ibid.*), including PTSD and other disorders identified in the most recent edition of the DSM. (§ 1001.36, subd. (b)(1).) The defendant must provide evidence of the mental disorder, which "shall include a diagnosis or treatment for a diagnosed mental disorder within the last five years by a qualified mental health expert." (*Ibid.*) A psychologist is a "qualified mental health expert" for purposes of the statute. (§ 1001.36, subd. (f)(1)(D)(2).) That expert "may rely on an examination of the defendant, the defendant's medical records, arrest reports, or any other relevant evidence." (§ 1001.36, subd. (b)(1).)

With respect to the second eligibility criterion, "the amended statute creates a presumption that the defendant's diagnosed mental disorder was a significant factor in the commission of the charged crime." (*Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.) That is, the court "shall find" that the diagnosed mental disorder was a significant factor "unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

The amended statute recharacterizes the remaining four criteria as suitability factors that the court must consider for any defendant who satisfies the eligibility requirements. (§ 1001.36, subd. (c); *Sarmiento*, *supra*, 98 Cal.App.5th at p. 891.) A defendant is suitable for pretrial diversion if (1) a qualified mental health expert opines that the symptoms of the defendant's mental disorder will respond to treatment, (2) the defendant consents to diversion and waives the right to a speedy trial, (3) the defendant agrees to comply with treatment, and (4) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community. (§ 1001.36, subd. (c)(1)-(4).)

Even if the defendant makes a prima facie showing that they satisfy all of the eligibility and suitability requirements, the court still has discretion to deny diversion. (§ 1001.36, subd. (a); *Sarmiento*, *supra*, 98 Cal.App.5th at p. 892.) We review the court's ultimate decision whether to grant diversion for abuse of discretion. (*Brown*, *supra*, 101 Cal.App.5th at p. 121.) "A trial court abuses its discretion when it bases its ruling on the wrong legal standard." (*Lunsted v. Superior Court* (2024) 100 Cal.App.5th 138, 147 (*Lunsted*).)

B.    *Application of the incorrect legal standard*

The People concede that the court erred by applying the former version of section 1001.36, but they contend that Deiner forfeited the argument. They note that Deiner did not draw the court's attention to the change in the law at the March 2023 hearing, after the court announced its tentative ruling. We exercise our discretion to reach the merits of Deiner's argument to forestall any eventual claim of ineffective assistance of counsel.

13

(*People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 ["An appellate court is generally not prohibited from reaching a question that has not been preserved for review by a party"]; *People v. Crittenden* (1994) 9 Cal.4th 83, 146 [reviewing forfeited claims on the merits in view of potential claim for ineffective assistance of counsel].)

The court erred by applying the outdated version of the statute. At the time of the court's ruling, the eligibility criteria required that Deiner "ha[d] been diagnosed with a mental disorder" by a qualified mental health expert within the last five years. (§ 1001.36, subd. (b)(1).) Dr. Leeb's recent PTSD diagnosis satisfied that requirement. The doctor was a qualified mental health expert within the meaning of the statute (a psychologist), and he diagnosed Deiner in 2021. But the court appeared to apply the former law, which instead necessitated that the court be "satisfied that the defendant suffers from a mental disorder." (Former § 1001.36, subd. (b)(1)(A).) Using that standard, the court found "no supporting evidence" that Deiner had PTSD and "zero evidence . . . that he had a mental illness other than drug abuse that contributed to the crime."

Moreover, the court found no evidence, "not even near a preponderance of the evidence," linking a mental disorder to the offenses. The court thus appeared to be applying the former law, which required the defendant to show by a preponderance of the evidence that the mental disorder was a significant factor in the offense. But Deiner was entitled to a presumption that his diagnosed mental disorder was a significant factor in the commission of the offenses, and that presumption may be rebutted only by clear and

14

convincing evidence to the contrary. (§ 1001.36, subd. (b)(2).) The court's application of the incorrect legal standard in both of the foregoing respects amounted to an abuse of discretion. (*Lunsted*, *supra*, 100 Cal.App.5th at p. 147.)

The proper remedy is to remand unless the record clearly indicates that the trial court would have reached the same conclusion using the correct standard. (*People v. Doron* (2023) 95 Cal.App.5th 1, 10; *Brown*, *supra*, 101 Cal.App.5th at p. 128.) The record lacks that clarity. The court did not appear to credit the PTSD diagnosis, and its finding that there was no evidence that a mental disorder was a significant factor in the offense appears to have been limited to the drug-related disorders. Under these circumstances, it is unclear whether the court would find by clear and convincing evidence that Deiner's diagnosed PTSD was not a significant factor. Dr. Leeb's report and testimony provided evidence of the various effects of PTSD (some of which we summarized in part II.B. of the Background section). But it is unclear whether the court considered any of that, given its rejection of the PTSD diagnosis. Whether PTSD was "was not a motivating factor, causal factor, or contributing factor" (§ 1001.36, subd. (b)(2)) in Deiner's offenses "is 'quintessential factfinding' [citation] and thus a question best left to the trial court to answer in the first instance." (*People v. Doron*, at p. 10.) We express no opinion on how the court should decide the issue on remand.

For all of these reasons, we conclude that the court erred by applying the incorrect legal standard to Deiner's diversion motion. We conditionally reverse the judgment,

15

reverse the order denying the diversion motion, and remand for the court to reconsider the motion.

II.    *Resentencing*

Deiner argues that the court abused its discretion by declining to consider a full resentencing on remand. He asserts that we ordered him to be "fully resentenced" in *Deiner I*. He additionally contends that we should remand for the court to resentence him under section 1172.1. The arguments lack merit.

After the remittitur issues, "the trial court is revested with jurisdiction of the case" to carry out the directions of the reviewing court. (*People v. Dutra* (2006) 145 Cal.App.4th 1359, 1366.) "'The terms of the remittitur define the trial court's jurisdiction to act.'" (*Id.* at p. 1367.) The remittitur directions are in the dispositional language of the opinion, which "must be read in conjunction with the opinion as a whole." (*Ayyad v. Sprint Spectrum, L.P.* (2012) 210 Cal.App.4th 851, 859.) "'The issues a trial court may address in remand proceedings are therefore limited to those specified in the reviewing court's directions, and if the reviewing court does not direct the trial court to take a particular action or make a particular determination, the trial court is not authorized to do so.'" (*People v. Cervantes* (2021) 72 Cal.App.5th 326, 332.)

The trial court did not misinterpret our directions on remand by refusing Deiner's request for a full resentencing. Specifically, Deiner asked the court to reconsider striking his prior strikes. Our disposition did not vacate his sentence or otherwise order the court to reconsider the entirety of his sentence. If there was any ambiguity about that in the

16

disposition, then the whole of the opinion dispelled it. Deiner argued only that we should remand for the court to exercise its newly granted discretion to strike the prior serious felony enhancements. He did not argue that the court erred by denying his *Romero* motion to strike the prior strikes, and we did not address that or any other issue that would entitle him to a full resentencing. The court correctly interpreted our directions on remand. (*People v. Cervantes*, *supra*, 72 Cal.App.5th at p. 332 [on remand for the trial court to consider whether to strike a firearm enhancement, the court had no authority to conduct a full resentencing].)

The court also did not err by refusing to recall the sentence and resentence Deiner under section 1172.1. At the time of the proceedings on remand, the statute permitted the court to recall the sentence on its own motion, but only "within 120 days of the date of commitment" to the Department of Corrections and Rehabilitation. (Former § 1172.1, subd. (a)(1), as amended by Stats. 2022, ch. 58, § 9.) Deiner was committed to the Department of Corrections and Rehabilitation in 2018. Section 11721.1 did not permit the court to recall the sentence on its own motion in March 2023, long after the 120-day period had expired.

Effective January 1, 2024, the Legislature amended section 1172.1 to permit the court to recall a sentence on its own motion "at any time if the applicable sentencing laws at the time of the original sentencing are subsequently changed by new statutory authority or case law." (§ 1172.1, subd. (a)(1), as amended by Stats. 2023, ch. 446. § 2.) The "[r]ecall and resentencing under this section may be initiated by the original sentencing

judge, a judge designated by the presiding judge, or any judge with jurisdiction in the case." (*Ibid.*) Deiner urges us to "remand for the trial court to consider whether to resentence" him under the recently amended statute. But the court needs no directions from us to recall the sentence and resentence Deiner under section 1172.1. As already explained, the statute gives the court authority to do that on its own motion if the applicable sentencing laws have changed. Our remittitur would not be the source of the court's jurisdiction in that respect.

## DISPOSITION

The judgment is conditionally reversed, and the order denying Deiner's motion for diversion under section 1001.36 is reversed. On remand, the trial court shall reconsider the motion under section 1001.36. If the court determines that Deiner qualifies for mental health diversion, then the court may grant diversion. If the court does not grant diversion, or if Deiner is granted diversion but does not successfully complete it, then the court shall reinstate the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ

J.

We concur:

McKINSTER

Acting P. J.

FIELDS

J.

18